### ROSSETTI et al. v. HILL et al.

### No. 11235.

Circuit Court of Appeals, Ninth Circuit.

May 8, 1947.

Rehearing Denied June 20, 1947.

See 162 F.2d 892.

Lawler, Felix & Hall, of Los Angeles, Cal., for appellants.

Richard H. Forster and Chauncey E. Snow, both of Los Angeles, Cal., for appellees P. B. Hill, Joanne Hill and Patricia Hill Harder.

Before MATHEWS, STEPHENS and ORR, Circuit Judges.

STEPHENS, Circuit Judge.

A sum of money ($10,060.00), the face sum of a life insurance policy, including certain incidental benefits, is on deposit with the district court registry awaiting distribution to the rightful owners. In an interpleader suit, instituted by the Northwestern Mutual Life Insurance Company, the court awarded the money to Peter B. Hill, Joanne Hill and Patricia Hill Harder, who will hereinafter be referred to as the Hill Children. The Hill Children are not the children of Genevieve Borlini Hill, but are the children of insured by a former wife. Co-executors of the estate of Genevieve Borlini Hill, widow of the insured, appeared in the action, claiming the money for the estate. They appeal.

George A. Hill, Jr. (insured), died, and 39 days thereafter his widow, Genevieve

Borlini Hill, who was named the direct beneficiary in the insurance policy, died. The Hill Children were named in the policy as contingent beneficiaries. Proof of death of the insured had been furnished the insurance company prior to Mrs. Hill's death, but she died without making an election as to whether she would take the insurance benefits in a lump sum or, in lieu thereof, to select payments through options open to her by the terms of the policy.

The Hill Children claim the insurance benefits because they believe a certain provision of the policy, together with the fact that Mrs. Hill died before the benefits had been paid over to her, convert their interest in the policy, in effect, from that of contingent beneficiaries to that of direct beneficiaries. The district court agreed that such construction was the correct one.

The pivotal provision is found in the policy under the heading "General Provisions", sub-headed "Direct and Contingent Beneficiaries." We italicize the pivotal provision. Sec. 11. "Subject to the rights of any Assignee, the Insured (1) may designate one or more Direct Beneficiaries if none be named herein, either with or without reservation of the right to revoke such designation; and (2) may designate one or more Contingent Beneficiaries whose interest shall be as expressed in this Policy; and (3) may change any Direct Beneficiary not irrevocably designated; and (4) may change any Contingent Beneficiary. If there be more than one Direct Beneficiary the interest of any deceased Direct Beneficiary, including any unpaid benefits due or to become due, shall pass to the surviving Direct Beneficiary or Beneficiaries unless otherwise directed by the Insured with the consent of the Company. *Upon the death of the last surviving Direct Beneficiary the Contingent Beneficiary or Beneficiaries, if any, shall succeed to the interest of such Direct Beneficiary, including any unpaid benefits due or to become due.* If no Direct Beneficiary or Contingent Beneficiary survives the Insured the Proceeds of this Policy shall be payable to the executors, administrators or assigns of the Insured. No such designation, revocation, change or direction shall be effective unless duly made in writing and filed at the Home Office of the Company (accompanied by this Policy) prior to or at the time this Policy shall become payable, and endorsed hereon by the Company."

Appellees and the district court were of the opinion that the italicized provision of Section 11, interpreted in the light of the whole policy, means that the insurance benefits go to the children if they have not been actually delivered to the widow before her death.

The section as quoted was written into the policy at its issue during the lifetime of all concerned and as far as in issue here, it refers to the respective status of the direct beneficiary and contingent beneficiaries, and what their rights, if any, will be at the insured's death in the separate circumstances related in each provision. Thus, the pivotal provision simply defines the contingent beneficiaries' right to be, that if there is no direct beneficiary at insured's death to take, they take the benefits.

But the widow, the direct beneficiary, was alive when insured died, and, therefore, by the terms of the policy the unqualified right to the insurance benefits vested in her at the first point of time occurring after insured's death. The reasoning in Chartrand v. Brace, 16 Colo. 19, 26 P. 152, 12 L.R.A. 209, 25 Am.St.Rep. 235, and in Kottman v. Minnesota Odd Fellows Mut. Ben. Soc., 66 Minn. 88, 68 N.W. 732, is sound, as we see it. All that remained for the widow to have the benefits actually in hand, or, in lieu thereof, the right to it by installments, was to send the proof of death of insured to the insurance company, which was done, and to make and to inform the company of her election as to how she would receive the money, which was never done.

Neither the insurance company nor any one else had the slightest claim upon the title to the money, but a burden was upon the company to hold and protect it. The widow died before she communicated her choice of how she would receive the benefits, and since she was entitled to the whole thereof, and the installment option was in lieu thereof, the total of all benefits were payable when the death prevented a choice being made.

There is nothing significant in the fact that the problem of choosing whether or not she would take the benefits in bulk or whether she would avail herself of the privileges under the option clauses open to her had not been acted upon prior to her death. In all probability her mind was not directed primarily to her finance problems. She had lost her husband, and she, herself, was to succumb in less than a month and a half thereafter.

It is argued that if any money derived from the insurance policy remains unpaid at the death of the direct beneficiary any such money goes to the contingent beneficiaries. The provision relied upon cannot be construed so as to bring about any such result. There is nothing in the policy to indicate that the direct beneficiary's rights to take the benefits were limited in any manner or that she would forfeit them if she failed to claim them or that her title was conditional upon the actual enjoyment of them.

■ We have seen that Mrs. Hill had a right to take all upon the insured's death. If she had actually received the full sum of the proceeds and had deposited them in bank, it could not be logically argued that they were held by her under a limited use. Certainly, had she received the benefits in hand, and had died without spending them all, the balance would not have gone to the contingent beneficiaries. Appellees do not so contend, but the point is one of consistency. If, when insured named his wife as direct beneficiary, he had intended that the phrase "including any unpaid benefits due or to become due" should mean that all of the proceeds of the policy should be paid to the contingent beneficiaries in the cir-

cumstances, it would have been consistent for him to have provided that any unpaid installments under the option plan should, upon the widow's death, be paid to the contingent beneficiaries. Instead, it is specifically provided differently in the policy— that " * * * Beneficiaries may make such election [as to options] in lieu of payment in one sum * * * [and when so made] the interest of any contingent beneficiaries * * * shall terminate." The policy even provides that the direct beneficiary, upon electing to take under an option plan, may name her own beneficiaries to take the unpaid balance. The fact of the matter is that the "including unpaid benefits" phrase in the quoted part of the policy refers only to incidental benefits which are provided for in the policy.[1]

Thus, the argument fails, that when taken by the four corners the policy reveals that insured provided insurance benefits for the wife first but that if conditions came about so that after insured's death the wife was not to enjoy them, they would go to the children.

The appellees, the Hill Children, rely heavily upon the case of Northwestern Mut. Life Ins. Co. v. Fink, 6 Cir., 118 F.2d 761. The policies of the Fink case and of ours are similar but not exactly alike. There is a provision in the Fink case that if the direct beneficiary shall die " such shares as she would have been entitled to receive shall be payable" to some one else. No provision of this kind is in the policy with which our case is concerned. In the cited case the direct beneficiary died before collecting the insurance benefit and the district court held the policy had vested in the direct beneficiary. The circuit court reversed

---

[1] Under heading "General Provisions", subheadings "Dividend Options" and "Post Mortem Dividend", is the following: "This Policy while in force shall participate annually in the divisible surplus of the Company. The Company will annually determine the dividend of such surplus equitably apportionable hereto but payment of the first dividend shall be contingent upon and proportionate to the premium or premiums due and paid for the second policy year. At the option of the Insured any dividend of surplus payable may be: (a) paid in cash; (b) applied towards the payment of pre-

mium hereon; (c) left to accumulate while this Policy is in force with interest credited annually at such rate, not less than 2½ per cent., as may be determined by the Company, and subject to withdrawal in cash at any time or payment with the proceeds of the Policy. If this Policy shall become payable by the death of the Insured any annual dividend otherwise payable at the end of the policy year will be paid with the proceeds of the Policy. Unless the Insured shall otherwise elect in writing dividends will be paid in cash."

552

on its construction of the quoted phrase. There was another different fact in the Fink case. Proof of death had not been made when the direct beneficiary died.

We make no expression as to the decision in the Fink case other than to say that it does not convince us that our reasoning as above set forth is erroneous or that our conclusions are wrong.

Reversed.