**Rose GORDON, as Administratrix of the Estate of Angelina Miller, Plaintiff-Appellee,**

v.

**ILWU–PMA BENEFIT FUNDS, Defendant-Appellant.**

**No. 77–2614.**

United States Court of Appeals, Ninth Circuit.

April 3, 1980.

Rehearing Denied June 3, 1980.

---

Craig E. Epperson, Lillick, McHose & Charles, San Francisco, Cal., for defendant-appellant.

Theodore W. Phillips, Phillips, Cohn & Greenberg, San Francisco, Cal., for plaintiff-appellee.

Before BROWNING, Chief Judge, TANG, Circuit Judge, and HOFFMAN,* District Judge.

WALTER E. HOFFMAN, District Judge:

This is an appeal by the Trustees of the International Longshoremen's and Warehousemen's Union Pacific Maritime Association Welfare Plan ("the Plan") from a judgment requiring the Plan to pay extended death benefits to the estate of Angelina Miller. The district court held that $8000 was due Mrs. Miller at the time of her death as a benefit stemming from the prior death of her husband, Ira G. Miller.

* The Honorable Walter E. Hoffman, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

The trustees had denied the estate's claim on the grounds that Mrs. Miller failed to complete the documentation necessary to establish her eligibility before her death, and that payment to the estate of a dependent was contrary to the intended purpose of the Plan (to provide benefits to living dependents). The district court found that the trustees acted arbitrarily and capriciously in denying payment to the estate because they failed to disclose specifically to participants that extended benefits would be denied if a beneficiary did not personally complete the necessary forms.

On appeal, the trustees contend that the district court erroneously applied principles developed by state courts in interpreting commercial insurance contracts. We agree, and, in accordance with our decision in *Rehmar v. Smith*, 555 F.2d 1362 (9th Cir. 1976), reverse the judgment of the district court.

## FACTS

The undisputed, material facts were set forth in the order of the district court. The ILWU–PMA Welfare Plan, a benefit plan for union members and their dependents, was created pursuant to the Labor-Management Relations Act, 29 U.S.C. § 186(c)(5). Currently, the Plan is subject to the provisions of the Employees Retirement Income Securities Act of 1974 (ERISA), 29 U.S.C. §§ 1001, *et seq.*

Ira G. Miller, a registered watchman under the ILWU–PMA collective bargaining agreement, died on August 23, 1974. As a participant in the Plan, he was entitled to certain death benefits. The administrators of the Plan determined that his widow, Angelina, might be qualified to receive $8000 as an extended death benefit under Program III of the Plan. On August 30, 1974, they mailed to her an affidavit form which she was to complete, sign and return if she were in fact qualified. She died September 7, 1974, before executing and returning the form.

After further correspondence and consultation with Mrs. Miller's daughter and with the administratrix of Mrs. Miller's estate, the Welfare Plan administrators decided that no survivor of Ira G. Miller met the qualifications for receiving the extended death benefit. The decision stated that Mrs. Miller had failed to submit necessary documentation of her claim prior to her death, and that it was the intention of the ILWU and the PMA, in agreeing to create a death benefits program, to pay this benefit only to surviving, qualified dependents, and not to estates. Mrs. Miller had not established her qualifications, nor was she surviving. This decision was ratified by the trustees on or about August 16, 1976.

Undisputed evidence establishes that the administrators correctly stated the intention of the bargaining parties. The employers and union representatives purposely agreed to a program of benefits which would partially offset the loss of income experienced by a surviving spouse and dependent children. To provide as large a benefit as possible, the class of eligible beneficiaries was to be kept small. There was no intent to provide a windfall to persons other than surviving beneficiaries or to the heirs of any estate.

However, the bargaining parties left the implementation of this portion of the bargaining agreement to the trustees of the Welfare Plan, directing that the precise eligibility and qualifying requirements be set forth by the trustees in rules for the administration of the death benefits program in accordance with the intentions of the parties. These rules were published in a brochure made available to longshoremen covered by the Welfare Plan, and incorporated without change as provisions of the group insurance policy issued by Republic National Life Insurance Company.

In relevant part, Program III rules 5 and 6 provided:

5. At date of death the deceased longshoreman must have had a dependent or dependents qualified to receive the benefit. . . .

6. The benefit will be paid to the qualified dependent or dependents as provided hereafter:

A. The woman who (a) survives the longshoreman, (b) was legally and formally married for at least one year immediately preceding his death, and (c) who shared a common domicile with the longshoreman for at least the one year immediately preceding his death. . . .

The trustees do not dispute that these rules and policy provisions, taken alone, give the impression that qualifications for benefits would be determined as of the date of the longshoreman's death. However, they rely on an additional administrative rule which provides in pertinent part:

This benefit is paid only on establishment of the facts required to show both eligibility of longshoremen and the qualification of the particular claimant. These facts must be shown by execution of the claim and acknowledgment thereof in affidavit form in accordance with the form set forth . . . .

The designated affidavit form specifies on its face that it may be completed only by the surviving person claiming to be qualified.

Neither the affidavit form nor this latter administrative rule was disclosed to longshoremen or their dependents in the brochure describing the benefit plan, although there is no evidence suggesting that disclosure would have been withheld had a request been made. This combination of rules and forms has been uniformly interpreted and applied by the trustees to deny payment of a Program III extended death benefit to persons situated as is the administratrix.

\* \* \* \* \* \*

The complaint in this case was filed on January 10, 1977. It was submitted to the district court on cross-motion for summary judgment on a record consisting of affidavits and documents. On May 16, 1977, the court granted summary judgment in favor of the estate.

In its seven page order the court acknowledged that the trustees possess broad discretion in setting eligibility rules for union pension benefits and that their decision is reversible only if it was arbitrary, capricious, made in bad faith, not supported by substantial evidence, or erroneous on a question of law. Applying this standard, the court found that the trustees had acted arbitrarily and capriciously in denying the claim because they failed to make a full and fair disclosure of the terms of coverage, and because reliance may have been placed on what would be understood from a reasonable reading of the disclosed rules.

The estate subsequently moved to amend the judgment to provide for interest and attorney's fees. On June 24, 1977, the court amended its judgment to provide the estate with prejudgment and post-judgment interest.

The trustees contend that the court erred by applying principles of commercial insurance law. They argue that federal common law controls the issues in this case and that state commercial insurance law is not part of the federal common law applicable to welfare plans existing in collective bargaining contracts. They add that the denial of Program III benefits to the estate was neither arbitrary nor capricious but rather based on a reasonable interpretation of Program III rules. The trustees also contend that the court erred in awarding prejudgment interest to the estate.

## APPLICABILITY OF ERISA

The district court claimed jurisdiction under Section 301(a) of the Labor-Management Relations Act, 29 U.S.C. § 185(a),[1] and Section 502(f) of the Employee Retirement Income Security Act of 1974 (ERISA), 29

---

1. 29 U.S.C. § 185(a) provides:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

U.S.C. § 1132(f).[2] Without referring to any of the provisions of ERISA, the court found that the trustees had interpreted their eligibility rules unreasonably and that, therefore, their denial of the estate's claim was arbitrary and capricious.

■ The court was correct in finding that jurisdiction existed under the Labor-Management Relations Act. *Rehmar v. Smith*, 555 F.2d 1362, 1366–67 (9th Cir. 1976). Under that Act, it was proper for the court to apply the "arbitrary and capricious" standard of judicial review to the trustees' decision. *Id.* at 1371. Recognizing that a finding that the trustees had acted arbitrarily and capriciously would be sufficient to reverse the trustees' decision under the Labor-Management Relations Act, the court apparently felt it unnecessary to consider the applicability of ERISA. On appeal however, we must decide whether any of the substantive provisions of ERISA were applicable and, if so, whether they were violated by the trustees.

ERISA, 29 U.S.C. §§ 1001 *et seq.*, was enacted by Congress as a program to protect beneficiaries of pension and welfare plans. *See Martin v. Bankers Trust Co.*, 565 F.2d 1276, 1278 (4th Cir. 1977). It established rules for reporting and disclosure, participation, vesting, funding, and fiduciary responsibilities under the plans. *Id.*

The majority of ERISA's substantive provisions, including those dealing with reporting and disclosure, 29 U.S.C. §§ 1021–1031, and fiduciary responsibilities, 29 U.S.C. §§ 1101–1114, did not become effective until January 1, 1975. *See* 29 U.S.C. §§ 1031, 1114, 1144; *Cowan v. Keystone Emp. Profit Sharing Fund*, 586 F.2d 888, 893 (1st Cir. 1978). Since both Ira and Angelina Miller died before 1975, the trustees cannot be held to have violated the reporting and disclosure provisions, as they were not yet in effect. *See* 29 U.S.C. § 1144.[3] The provisions governing participation and vesting, 29 U.S.C. §§ 1051–61, and funding, 29 U.S.C. §§ 1081–86, are also inapplicable as they do not apply to "employee welfare benefit plans."[4] 29 U.S.C. §§ 1051, 1081(a)(1). Therefore, only the fiduciary responsibility provisions of ERISA, 29 U.S.C. §§ 1101–14, are applicable.

■ Since ERISA's fiduciary duties did not become effective until January 1, 1975, a violation of those duties must amount to a breach of trust in the administration of the plan after that date.[5] The trustees' denial

---

2. 29 U.S.C. § 1132 provides in pertinent part:

    (a) A civil action may be brought—

    (1) by a participant or beneficiary—

      (A) for the relief provided for in subsection (c) of this section, or (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

    .    .    .    .

    (f) The district courts of the United States shall have jurisdiction; without respect to the amount in controversy or the citizenship of the parties, to grant the relief provided for in subsection (a) of this section in any action.

3. 29 U.S.C. § 1144 provides in pertinent part:

    (a) Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title. This section shall take effect on January 1, 1975.

    (b)(1) This section shall not apply with respect to any cause of action which arose, or any act or omission which occurred, before January 1, 1975.

    .    .    .    .

Ira Miller died on August 23, 1974, and Angelina Miller died on September 7, 1974. Any failure of the trustees to disclose or report adequately to the Millers clearly was an omission that occurred before January 1, 1975. Accordingly, the trustees could not be held accountable under ERISA's disclosure or reporting provisions.

4. Under Section 3 of ERISA, 29 U.S.C. § 1002(1), the ILWU–PMA Welfare Plan would be termed an "employee welfare benefit plan."

5. *See Morgan v. Laborers Pension Trust Fund for N. Cal.*, 433 F.Supp. 518, 522 n.6 (N.D.Cal. 1977) ("If defendants' administration of the plan violated their general fiduciary duties after January 1, 1975, they are liable as provided for in ERISA.") If there was such a violation, jurisdiction over the suit would exist in federal district court. Section 502 of ERISA, 29 U.S.C. § 1132. *See* note 2, *supra.*

of the estate's claim occurred after January 1, 1975; therefore, at the time of the denial, the trustees' actions were subject to ERISA's fiduciary standards. 29 U.S.C. § 1104 provides, in part, that:

> a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—
>
>> (A) for the exclusive purpose of:
>>
>>> (i) providing benefits to participants and their beneficiaries; and
>>>
>>> (ii) defraying reasonable expenses of administering the plan;
>>
>> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;
>
> .    .    .    .    .
>
>> (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter.    .    .    .

The trustees contend that this statute imposes the same standard of judicial review as is applied under the Labor-Management Relations Act, i. e., whether the decision was arbitrary and capricious. Consequently, the applicability of any of ERISA's fiduciary requirements to this case would be of no importance because the result would be the same as the one which would obtain under the Labor-Management Relations Act. After reviewing the case law,[6] we are inclined to agree with this analysis. Accordingly, we find that the applicability of ERISA to this case is inconsequential, because the actions of the trustees would be subject to the same standards of judicial review under ERISA's fiduciary provisions as they are under the Labor-Management Relations Act and *Rehmar v. Smith, supra.*

### THE LAW APPLIED BY THE DISTRICT COURT

As noted above, the district court was correct in applying the "arbitrary and capricious" standard of judicial review to the trustees' decision. *Rehmar v. Smith,* 555 F.2d at 1371. But the court erred when it relied on California insurance and probate law to find that the trustees' action was, in fact, arbitrary and capricious.

■ The court found that a longshoreman who had read the rules printed in the Plan's brochure would legitimately expect that his wife would receive the extended benefits if she were alive at the time of his death. Under the principles of commercial insurance and probate laws, the court's analysis would be correct—the insurance proceeds would vest in the beneficiary upon the death of the insured. See *Rosetti v. Hill,* 161 F.2d 549 (9th Cir. 1947). However, in this case, we are not dealing with "standardized form contracts offered by commercial insurance companies to individual consumers of lesser bargaining strength on a

---

6. *See, e. g., Morgan v. Laborers Pension Trust Fund for N. Cal.,* 433 F.Supp. 518 (N.D.Cal. 1977):

> The applicability of the fiduciary requirements of ERISA is of questionable importance since defendants concede that the Court has jurisdiction over this case under § 302 of the LMRA. It appears that the same "arbitrary and capricious" standard of review governs judicial supervision of trustees, regardless of the origin of their fiduciary duties. As the Court of Appeals for the Ninth Circuit observed in a recent pension fund case:
>
>> "To give meaning to the rights of beneficiaries involved in any fiduciary relationship, the courts have always found it necessary to subject the conduct of the fiduciaries to judicial review and correction. Where, however, the instrument defining the fiduciaries' duties gives them broad discretion, as is generally the case with welfare and pension trusts, the courts limit their review and intervene in the fiduciaries' decisions only where 'they have acted arbitrarily or capriciously towards one of the other persons to whom their trust obligations run.' We find this standard of judicial review, which leads neither to abdication of traditional judicial control fiduciaries nor to excessive judicial intervention in trust operations, in harmony with federal labor policy."
>
> *Id.* at 524, [quoting *Rehmar v. Smith,* 555 F.2d 1362, 1371 (9th Cir. 1976)]. *See also Riley v. MEBA Pension Trust,* 570 F.2d 406, 413 (2d Cir. 1977).

take-it-or-leave-it basis." *Rehmar v. Smith,* 555 F.2d at 1368. The ILWU–PMA welfare plan was the result of collective bargaining between Ira Miller's union and his employers, parties of equal bargaining strength. Our opinion in *Rehmar* makes it clear that in this case, the principles of state commercial insurance and probate law are inapplicable.[7]

■ The court also adopted an estoppel theory, holding that the decision to deny the benefits was arbitrary and capricious because reliance "may have been placed" on "the common understanding of the rules as published." This conclusion is purely speculative and cannot be relied upon to reverse the trustees' decision. There was no finding that either of the Millers misunderstood the fact that the Plan provided a welfare benefit rather than a conventional life insurance policy. There was no finding or evidence that Angelina Miller failed to complete the necessary forms because of any actions attributable to the trustees or because she believed that the extended death benefits "vested" automatically upon her husband's death. In short, there was no evidence of detrimental reliance, a necessary element of estoppel. *Rehmar v. Smith,* 555 F.2d at 1369.

The district court's reliance on California commercial insurance and probate principles to construe the Plan's eligibility rules was erroneous, as was its inference of estoppel. *Rehmar v. Smith.* Therefore, its judgment must be reversed. The question remains, however, as it did in *Rehmar,* whether judgment should be entered for the trustees.

## REVIEW OF THE TRUSTEES' DECISION

■ The trustees interpreted the Program III rules as requiring a claimant to personally execute the necessary documentation in order to establish his or her eligibility for extended death benefits. Unless this interpretation was unreasonable, it must be upheld on review. *Rehmar v. Smith,* 555 F.2d at 1372. Where the rules are susceptible to more than one reasonable interpretation, the court may not substitute its judgment for that of the trustees. *Miniard v. Lewis,* 387 F.2d 864, 865 (D.C.Cir. 1967), *cert. denied,* 393 U.S. 873, 89 S.Ct. 166, 21 L.Ed.2d 144 (1968).

The district court recognized that the *substance* of the trustees' position was reasonable and in conformance with the purpose of Program III, which was to provide benefits for qualified surviving dependents (i. e., spouse or unmarried children) so that they could continue to meet their living expenses. Nevertheless, the court concluded that the rules were susceptible to only one rational interpretation—that a qualified dependent is entitled to extended benefits if he or she is alive when the participant dies, regardless of whether he or she personally completes the required documentation. In reaching this conclusion, the court relied on commercial insurance and probate law principles which, as stated above, are inapplicable to this case. Absent these principles, it cannot be said that the trustees' interpretation was unreasonable.

We believe that the rules can reasonably be read to support the trustees' position. Specific language pointing out that certain documentation must be "supplied upon request" in order to establish a claimant's eligibility was included in the description of the Plan distributed to participants. The affidavit form sent to Angelina within three days of her husband's death specified that it was to be completed only by the surviving person claiming to be qualified. This requirement, that the claimant person-

---

**7.** If congressional labor policy is successful, these parties are of relatively equal bargaining strength. There is no basis in the record before us for treating this collective bargaining agreement as a contract of adhesion. Indeed, we doubt that the California courts would apply adhesion contract analysis in this case. To the extent that the principles of California commercial insurance law would be applicable, however, we hold that they are not consistent with the federal policy of treating parties to collective bargaining contracts as parties of equal strength.
*Rehmar v. Smith,* 555 F.2d 1362, 1368–69 (9th Cir. 1976).

ally complete the affidavit, was reiterated in an administrative rule adopted by the trustees.[8] Reading these rules as requiring an applicant to establish his or her qualifications by personally completing the required forms is not unreasonable.

In the present case the trustees disposed of the claim in accordance with uniform interpretations of the Program III rules that have been consistently followed in similar cases. Such adherence to a consistent pattern of interpretation is significant evidence that the trustees have not acted arbitrarily. *See Rehmar v. Smith,* 555 F.2d at 1372.[9]

The trustees have established that a rational nexus exists between the purpose of the Plan and their decision. *See Roark v. Lewis,* 401 F.2d 425, 429 (D.C.Cir.1968). The benefit claimed by the estate, of which Angelina Miller's adult daughter is the sole beneficiary, was denied because its payment would contravene the purpose of the trust (to provide living expenses for dependents); it would allow the trust funds to be put to a use not permitted by the terms under which Program III was created. The trustees' decision to deny the claim fulfills rather than frustrates the purpose of the Plan. *See Pete v. United Mine Wkrs. of Am. Welf. & R. F. of 1950,* 517 F.2d 1275, 1286 (D.C.Cir.1975). Since it conforms to a reasonable interpretation of the Plan's rules, and has been a consistent position of the trustees, it cannot be deemed arbitrary and

capricious. Accordingly, final judgment must be entered in favor of the trustees.[10]

REVERSED WITH DIRECTIONS TO ENTER FINAL JUDGMENT.

---

**8.** The affidavit form and the administrative rule adopting its use were not included in the brochure describing the Plan, but they were otherwise available for perusal by participants or beneficiaries. The administrators were under no obligation to provide participants with a description of the procedures to be followed in a claim for benefits.

The Welfare Pension Plan Disclosure Act, 29 U.S.C. §§ 301–09, in effect at the pertinent time here, did not require the administrators of a welfare plan to deliver a description of procedures to be followed in a claim for benefits, except upon written request. 29 U.S.C. §§ 304–06. There is no evidence that such a request was made in this case.

**9.** In *Reiherzer v. Shannon,* 581 F.2d 1266, 1273–74 (7th Cir. 1978), the arbitrariness of the denial of Reiherzer's pension on the ground

that he was "self-employed" was demonstrated by the "ability of the trustees to blow hot or cold on the definition of 'self-employed' under the Plan." Another example might be where the trustees deviated from their normal eligibility requirements in order to deny benefits on account of race or religion. *See Roark v. Lewis,* 401 F.2d 425, 427 (D.C.Cir.1968). These examples are altogether different from the present case where the trustees have consistently refused to pay extended death benefits to dependents who would otherwise be qualified but for their failure to survive the deceased longshoreman for a period of time sufficient to enable them to complete the necessary forms.

**10.** In view of this disposition it is not necessary for us to consider the estate's claim for interest and attorneys' fees.