William J. QUINN, Appellee,

v.

BURLINGTON NORTHERN INC. PENSION PLAN, Burlington Northern Inc. Pension Trust and The First Trust Company of Saint Paul, a Minnesota banking corporation, as Trustee, Appellants.

William J. QUINN, Appellant,

v.

BURLINGTON NORTHERN INC. PENSION PLAN, Burlington Northern Inc. Pension Trust and The First Trust Company of Saint Paul, a Minnesota banking corporation, as Trustee, Appellees.

Nos. 81–1035, 81–1086.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 12, 1981.

Decided Nov. 30, 1981.

James W. Littlefield, argued, John M. Sullivan, Briggs & Morgan, P. A., St. Paul, Minn., for Burlington Northern Inc.; Steven L. Wood, St. Paul, Minn., of counsel.

Frank Claybourne, Doherty, Rumble & Butler, St. Paul, Minn., Harry P. Lamberson, Frederick V. Lochbihler, argued, Chapman & Cutler, Chicago, Ill., for Quinn.

Before LAY, Chief Judge, McMILLIAN, Circuit Judge, and COLLINSON,* Senior District Judge.

LAY, Chief Judge.

William J. Quinn is a participant in the Burlington Northern Inc. Pension Plan based on his employment with the Chicago, Burlington and Quincy Railroad and with the Burlington Northern, Inc. He brought suit against the Burlington Northern Pension Plan in the federal district court claiming the Plan Administrator erred in offsetting the Burlington Northern pension payments to him under the Burlington Plan with monies he receives under an employment agreement with the Chicago, Milwaukee, St. Paul and Pacific Railroad Company. The parties filed cross motions for summary judgment.

The district court, the Honorable Robert G. Renner presiding, upheld the Administrator's offset between June 1, 1976, and October 1, 1978, but declared Quinn to be entitled to larger benefits after the latter date. This appeal and cross-appeal followed. We affirm the district court in part and reverse in part and require reinstatement of the Plan Administrator's ruling requiring an offset both before and after October 1, 1978.

*Facts.*

From February 1940 to April 1954, Quinn was employed by the Soo Line Railroad. From April 1, 1954, to October 12, 1966, Quinn was employed by the Milwaukee Road. Quinn was then hired by the Chicago, Burlington & Quincy Railroad (hereinafter CB&Q), a predecessor railroad of the Burlington Northern, (hereinafter BN). As a precondition to commencing employment with CB&Q, all of Quinn's prior railroad

* William R. Collinson, Senior District Judge, Eastern and Western Districts of Missouri, sitting by designation.

service was credited and included as continuous service under CB&Q's pension plan. Quinn served as president, chief executive officer and as a director of CB&Q until March 1, 1970. On March 1, 1970, the CB&Q and other companies merged to form the BN. Quinn then became vice-chairman of BN's board of directors, a position he held for two weeks, resigning March 15, 1970.

Quinn then entered into an employment agreement with the Milwaukee Road that was to end May 7, 1981. It provided for an annual salary during that period of not less than $150,000. After May 7, 1981, Quinn was to be paid, at his option, either (1) one-half his annual salary, but not less than $75,000 per year, or (2) pension benefits under the Milwaukee Road's pension plan.[1] To select the Milwaukee Road Pension Plan, Quinn was required to irrevocably elect in writing to receive these benefits and consequently forfeit all rights to receive the lifelong "one-half of annual salary." The amounts to be forfeited would have substantially exceeded any amounts which Quinn could have received under the Milwaukee Road Pension Plan. Quinn never elected to take the Milwaukee Road Pension Plan benefits in lieu of the one-half salary.

In December 1977, the Milwaukee Road filed for reorganization under the Bankruptcy Act. Quinn's employment agreement was subsequently renegotiated in terms less favorable to him. The new agreement called for Quinn (1) to retire no later than October 1, 1978, (2) to receive no more than $45,000 per year from October 1978 to May 1981 as a consulting fee, and (3) to receive $75,000 annually beginning October 1, 1978. Under this agreement, no option to receive pension funds was given. Quinn has received these payments.

In March 1979, Quinn was notified by the BN Plan representatives that he was to receive monthly pension benefits in the amount of $448.42 under the BN Plan. He was told that he was entitled to 30 years of "continuous service" from 1940 to 1970. Based on this 30 years of service, Quinn would be entitled to receive a monthly benefit of $3,927.32. However, the representatives stated that the BN Plan would only make payment to Quinn at the rate of $448.42 per month based on Quinn's three years and five months with CB&Q and BN. The representatives claim that under section 5.4 of the relevant Plan articles, the Plan intended to offset the actuarial equivalent of the value of the retirement benefits Quinn was receiving from the Milwaukee Road against the benefit payments due him under the BN Plan for service from 1940 to 1970.

Quinn exhausted his administrative remedies and sued in federal district court alleging that he is entitled to receive a monthly pension benefit for life in the amount of $3,937.32. He claims this amount for each month since June 1, 1976, the first day of the month following his 65th birthday.[2] The district court held that *prior* to October 1, 1978, the Plan Administrator properly offset certain pension benefits ordinarily due Quinn because during that time he was "entitled to receive" similar benefits from the Milwaukee Road Pension Plan. However, the district court held that, with respect to the period *after* October 1, 1978, such an offset was improper. It reasoned that postretirement benefits Quinn received from the Milwaukee Road, under the terms of the renegotiated employment agreement, were not within the proscriptions of section 5.4 of the BN Plan.

The dispute in this case rests upon the interpretation of language in section 5.4 of the BN Plan which provides for an offset of benefits received under other qualified plans. The plan provides in pertinent part:

> [t]he amount of monthly pension payable to a participant ... shall be reduced by

1. Quinn accrued vested pension benefits under the Milwaukee Road Pension Plan of approximately $63,000 per year, based *in part* on his railroad service from February 19, 1940 through October 11, 1966.

2. The BN Plan and the trustees have made payments from the trust fund to Quinn at the rate of $448.42 per month only, retroactive to June 1, 1976.

the actuarial equivalent of any vested benefit which such participant has received, or which he is entitled to receive, under any other pension plan which meets the requirements of section 401(a) of the Internal Revenue Code with respect to service with another employer which is included in such participant's period of continuous service under this Plan. . . .

Section 5.4

*Standard of Review.*

■ Review by the courts of the Plan Administrator's decision is limited. A reviewing court generally will intervene in the administration of a pension plan only where the trustee's action is arbitrary, capricious, or an abuse of discretion. *Morgan v. Mullins,* 643 F.2d 1320, 1321 (8th Cir. 1981); *Bueneman v. Central States, Southeast and Southwest Areas Pension Fund,* 572 F.2d 1208, 1209 (8th Cir. 1978); *Phillips v. Kennedy,* 542 F.2d 52, 54 (8th Cir. 1976); *Maness v. Williams,* 513 F.2d 1264, 1265 (8th Cir. 1975). Although, where the trustee is actually interpreting statutory law the "arbitrary, capricious, or abuse of discretion" standard of review is inapplicable. *Winer v. Edison Bros. Stores Pension Plan,* 593 F.2d 307, 312 (8th Cir. 1979).

Quinn argues, however, that the "abuse of discretion" standard is applicable only when the court reviews plan *action* and not when it reviews the interpretation of the language of plan articles. He contends that here, where the language of section 5.4 is at issue, recourse should be had to ordinary principles of contract interpretation. State law principles are not to be used as state law; such use would contravene ERISA's preemption provisions. Instead, Quinn urges the court to borrow the contract principles to use as federal law where ERISA is silent. *Landro v. Glendenning Motorways, Inc.,* 625 F.2d 1344, 1354 (8th Cir. 1980); *Shaw v. Kruidenier,* 470 F.Supp. 1375, 1382 (S.D.Iowa 1979), *aff'd mem.,* 620 F.2d 307 (8th Cir. 1980).

However, despite *Shaw* and dicta in *Landro,* this court has recently indicated that it will apply the "arbitrary, capricious and abuse of discretion" standard when reviewing a trustee's interpretation of the language of a pension plan. *Morgan v. Mullins,* 643 F.2d 1320 (8th Cir. 1981). Other circuits are in agreement. For example, the Fifth Circuit held recently in *Paris v. Profit Sharing Plan for Employees of Howard B. Wolf, Inc.,* 637 F.2d 357 (5th Cir. 1981), that "[a]lthough the determination of eligibility for pension benefits seems to be a matter of contract law, 'the clear weight of federal authority' mandates that the trustee's determinations of eligibility are to be upheld unless arbitrary or capricious." *Id.* at 362. *See also Smith v. CMTA–IAM Pension Trust,* 654 F.2d 650, 654 (9th Cir. 1981); *Gordon v. ILWU–PMA Benefit Funds,* 616 F.2d 433 (9th Cir. 1980).

■ The "arbitrary, capricious, or abuse of discretion" standard is the appropriate standard to use when reviewing the Administrator's interpretation of section 5.4 of the BN Pension Plan. *See Morgan v. Mullins, supra.*

*Merits.*

■ The district court found that the Administrator's determination that section 5.4 was applicable to the period prior to October 1, 1978, was not arbitrary. We agree. The court did find, however, that the Administrator abused his discretion with regard to the period after the October 1, 1978 renegotiation of plaintiff's employment agreement. We disagree with the latter finding.

All parties agree that section 5.4 was enacted to prevent receipt of duplicate pension benefits for the same period of railroad service. Under section 5.4 an offset against the BN Plan benefits otherwise due the recipient may be employed for:

(1) Vested benefits which a participant has received or is entitled to receive;

(2) Under another pension plan which meets the requirements of section 401(a) of the Internal Revenue Code.

(3) With respect to service with another employer which is included in the partici-

pant's period of continuous service under the plan.

The district court found that for the period prior to October 1, 1978, Quinn was "entitled to receive" benefits from the Milwaukee Road Pension Plan. It also found that, under the terms of the initial employment agreement, Quinn was then a participant in the Milwaukee Road Pension Plan, a qualified plan which meets the requirements of Internal Revenue Code section 401(a). Quinn was found to have acquired a nonforfeitable right to pension benefits upon attainment of normal retirement age. The court also held under the terms of section 5.4 ("entitled to receive") Quinn was not required to have an unconditional right to receive benefits. The district court found that, when viewed in terms of the admitted policy of section 5.4 to avoid duplicate benefits for the same period of continuous service, Quinn was still "entitled to receive" even though he never elected to take pension benefits in lieu of other retirement benefits. Because Quinn was a plan participant, 29 U.S.C. § 1053 mandated that plaintiff had a nonforfeitable right to such benefits.[3] We agree with these findings. However, contrary to the district court, we hold that even after October 1, 1978, an offset by the BN Plan is also proper.

An examination of Burlington Northern's argument shows why the offset is correct. That argument is fairly simple. Because Quinn was an employee of the Milwaukee Road during the period subsequent to March 15, 1970, he was a participant in the Milwaukee Road Pension Plan. This plan is fully qualified under section 401(a) and is required by law to provide pension benefits to its vested participants which are nonforfeitable and which may not be assigned or alienated. When Quinn reached normal retirement age on May 5, 1976, his right to

receive pension benefits from the Milwaukee Road Pension Plan then became fully vested. Quinn's election on October 1, 1978, to receive $75,000 annually in lieu of pension benefits from the Milwaukee Road Pension Plan does not nullify the BN Plan's statutory obligation to provide Quinn, should he so request, the pension benefits which became vested pursuant to the Plan upon his reaching age 65. Thus, section 5.4 of the BN Plan is applicable in determining the amount of benefits Quinn is entitled to receive under that plan for the periods both before and after October 1, 1978.

BN argues that the district court was incorrect in holding that Quinn was a participant in the Milwaukee Road Pension Plan by reason of his initial employment agreement. It asserts that Quinn was a participant in the Milwaukee Road Pension Plan by virtue of his status as an employee of the Milwaukee Road and not by virtue of the employment agreement. Once Quinn became entitled to nonforfeitable rights to pension benefits under the Milwaukee Road Pension Plan (i. e. when he turned 65) he was forever a participant in the Milwaukee Road Pension Plan and at all times subsequent to May 5, 1976, legally entitled to receive pension benefits from the Milwaukee Road Pension Plan.

We agree that Quinn is a full participant in the Milwaukee Road Pension Plan. Paragraph 2.1 of that plan provides:

All of the Company's Employees on the Effective Date shall become Participants in the Plan on the Effective Date.

The effective date of the Milwaukee Road Pension Plan was January 1, 1976. Since Quinn was an employee of the Milwaukee Road on that date he was a participant in the plan. Under the Plan his rights to pension benefits were to become vested or nonforfeitable on May 5, 1976. *See* ERISA

---

**3.** Section 203 of ERISA (Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1053) provides, *inter alia*, that "[e]ach pension plan shall provide that an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age...." ERISA (29 U.S.C. § 1002(19)) provides that "[t]he term 'nonforfeitable' when

used with respect to a pension benefit or right means a claim obtained by a participant or his beneficiary to that part of an immediate or deferred benefit under a pension plan which arises from the participant's service, which is unconditional, and which is legally enforceable against the plan."

§ 203(a)(3), 29 U.S.C. § 1053(a)(3). Thus, Quinn was a full participant and the Milwaukee Road's obligation to meet the minimum funding standards set by ERISA arose solely because of Quinn's rights to benefits thereunder; Quinn was not a participant for funding purposes only.

Quinn's claim that the 1970 employment agreement excludes him from participation is incorrect. First, the agreement precedes the 1976 Plan which made each employee a participant. Also, both the 1970 agreement and the 1978 modification provide for the trustee of the Milwaukee Road to pay Quinn, "in lieu of any pension to which he is entitled under the Debtor's (Milwaukee Road's) Pension Plan, the sum of Seventy-five Thousand ($75,000) Dollars annually...." These facts show that Quinn actually is a full participant who has been *entitled to receive* pension benefits from the Milwaukee Road Pension Plan.

*Conclusion.*

We conclude that Quinn is a participant in the Milwaukee Road Pension Plan, a qualified plan, by virtue of his employment with the Milwaukee Road. His rights to pension benefits became vested and nonforfeitable on his 65th birthday, May 5, 1976. Quinn has been "entitled to receive" benefits pursuant to the Milwaukee Road Pension Plan and continues to be "entitled to receive" pension benefits even though he acquired rights to receive $75,000 annually "in lieu of" pension benefits from the Milwaukee Road Pension Plan. Thus, we hold that the district court erred in finding that the BN Plan could not offset the actuarial equivalent subsequent to October 1, 1978.

The district court focused on the terms of the employment agreement in reaching its bifurcated decision. We feel this was incorrect. Quinn became a participant and was entitled to receive benefits not because of the employment agreement but because of his employment by the Milwaukee Road.

Thus, we conclude the finding of the district court in this regard is clearly erroneous.

Since we have determined that Quinn has been entitled to receive pension benefits from the Milwaukee Road Pension Plan, then, pursuant to section 5.4 of the BN Plan, the Plan Administrator can offset the amount due Quinn for his years of actual and credited service by the actuarial equivalent of the amount Quinn has been entitled to receive from the Milwaukee Road Pension Plan for the years 1940–1966.[4]

The judgment of the district court is affirmed in part and reversed in part, in accord with this opinion. The judgment of the district court upholding the Plan Administrator's ruling applying an actuarial offset to BN pension benefits prior to October 1, 1978, is affirmed. The judgment of the district court finding that the Plan Administrator abused his discretion by offsetting benefits subsequent to October 1, 1978, is reversed and remanded.

---

4. Quinn is presently receiving $448.42 per month from the BN Plan. This payment is based upon his 3½ years of service with the CB&Q and the Burlington Northern and is the minimum that Quinn can be paid. Section 5.4 provides that the amount of the monthly pension shall not be reduced below the amount which would have been payable if the period of service with another employer were excluded from the participant's period of continuous service under the BN Plan.