Joan JACKSON and Robert J. Obiecunas, Executors of the Estate of Patricia A. Obiecunas, Plaintiffs,

v.

PACIFIC FIDELITY LIFE INSURANCE COMPANY, Defendant,

v.

Joan Jackson and Robert J. Obiecunas, Individually and as Executors of the Estate of Patricia A. Obiecunas, Janet Obiecunas, Beth Ann Bretcko, Joy E. Wertz, Gary B. Obiecunas, and Mary P. Grubor, Additional Defendants.

No. CIV.A. 97–1002.

United States District Court, W.D. Pennsylvania.

Jan. 29, 1999.

Elaine Cribbs Rizza, Washington, PA, for Plaintiffs.

Pamela G. Cochenour, Bryan K. Shreckengost, Vincent R. Baginski, Pittsburgh, PA, for Defendants.

## OPINION

ZIEGLER, Chief Judge.

Pending before the court are cross-motions (docs. no. 30, 40) of the parties for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. Plaintiffs, Joan Jackson and Robert J. Obiecunas, acting as executors of the estate of Patricia A. Obiecunas, seek summary judgment with respect to a claim by the estate to the proceeds of an annuity contract. Interpleader defendant Gary B. Obiecunas seeks summary judgment regarding claims for the proceeds of the policy by the contingent beneficiaries. For the reasons set forth below, defendant's motion will be granted, and plaintiff's motion will be denied.

### I. *Background and Procedural History*

On May 6, 1989, Vincent J. Obiecunas purchased an "Excalibur II" annuity from Pacific Fidelity Life Insurance Company ("Pacific"), for which he paid a single premium of $100,000. Doc. no. 2, ex. A. The annuity contract designates Patricia Obiecunas, Vincent Obiecunas' wife, as the primary beneficiary and identifies seven contingent beneficiaries: "Janet—Joy—Beth—Gary—Robert—Mary—Joan." *Id.* By its terms, the annuity would commence payment to the annuitant, Vincent Obiecunas, on December 7, 2012. *Id.* In the event of Mr. Obiecunas' death prior to the December 7, 2012 date, section 6(A)(1) of the policy provides that "the Annuity Purchase Value will be paid to the beneficiary unless a contingent annuitant has been designated." *Id.* Vincent Obiecunas did not designate a contingent annuitant. Section 6(A)(1) also provides that "the

beneficiary will receive a lump sum unless a Settlement Option has been elected." *Id.*

The annuity sets forth certain terms related to beneficiaries. In particular, section 3(K) of the annuity indicates that "[i]f no contingent beneficiary is designated and the beneficiary dies while receiving or entitled to receive payments, any remaining payments would be made to the beneficiary's estate." *Id.* "Beneficiary" is defined in the annuity as "[t]he person to whom payments will be made if the annuitant dies." *Id.*

At the time that the annuity was issued, Pacific also issued an amendatory rider which addressed a scenario involving the death of the annuitant prior to the commencement date of the annuity. The rider provides, in part, that "[i]f the annuitant dies before the Annuity Commencement Date, the Annuity Purchase Value must be paid out to the beneficiary within five years after the death of the annuitant." *Id.* The rider also indicates that the beneficiary may elect a settlement option, or, if the beneficiary is a surviving spouse of the annuitant, may continue the policy with the spouse as the new annuitant. *Id.*

On September 21, 1994, Vincent Obiecunas died. Doc. no. 2, ex. B. Patricia Obiecunas was the executor of his estate. On December 30, 1994, Pacific sent Mrs. Obiecunas a letter acknowledging receipt of a certified copy of the death certificate of Vincent Obiecunas, letters testamentary, and a letter of authorization from Mrs. Obiecunas. Doc. no. 20, ex. B. At that time, Pacific also informed Mrs. Obiecunas of various options concerning disposition or continuation of the annuity. *Id.* Such options included a lump sum payout, periodic payments, deferred payment, or a continued annuity with Mrs. Obiecunas as the annuitant. *Id.* Finally, Pacific advised Mrs. Obiecunas of her obligation to provide certain information to complete whichever of the options she chose to exercise. *Id.* There is no evidence that Mrs. Obiecunas elected either the continuation of the annuity or any specific payment option. Nor is there evidence of record that she provided any further information to Pacific.

On October 9, 1996, Patricia Obiecunas died. As of that date, Pacific had not distributed any funds related to the annuity. Although plaintiffs have requested that Pacific pay the annuity purchase value to the estate, Pacific has refused claiming that the terms of the annuity mandate payment of the annuity purchase value to the contingent beneficiaries. Both the estate and the contingent beneficiaries claim the proceeds of the policy under the terms of the annuity.

Plaintiffs filed the instant action, asserting their right to the annuity proceeds, and then filed an amended complaint. Pacific answered and requested the court's permission to pay the proceeds of the policy to the Clerk of Court and counterclaimed for interpleader of the contingent beneficiaries pursuant to Rule 22 of the Federal Rules of Civil Procedure. On September 3, 1997, the court granted Pacific's requests, joined the contingent beneficiaries as additional defendants, and ordered Pacific to pay the value of the policy to the Clerk of Court.

Plaintiffs filed an original motion for summary judgment, and defendant Gary Obiecunas filed a cross-motion for summary judgment. The cross-motion was joined by defendant Mary Grubor. This court denied both motions in an opinion dated May 18, 1998, finding that questions of material fact existed concerning which of two conflicting riders controlled.

On or around July 24, 1998, plaintiffs filed a second motion for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. On or around October 27, 1998, Gary Obiecunas filed a second cross-motion for summary judgment.

## II. *Standard*

### A. *Standard for Summary Judgment*

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In considering a motion for summary judgment, we must examine the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *Anderson v.*

*Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### B. *Choice of Law*

■ State law applies to a determination of the rights of rival claimants to an interpleaded fund. *Federal Ins. Co. v. Areias,* 680 F.2d 962, 963 (3d Cir.1982), *citing Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). *See also Metropolitan Life Ins. Co. v. McCall,* 509 F.Supp. 439, 441 (W.D.Pa.1981).

■ As all of the parties to this case have relied principally on Pennsylvania law in their pleadings, it appears that they have determined that Pennsylvania law controls the outcome of the substantive issues in this case. We agree. The annuity appears to have been contracted in Pennsylvania to a Pennsylvania resident. Primary beneficiary Patricia Obiecunas was a resident of Pennsylvania at the time of her death. The competing claimants for the annuity are residents of Pennsylvania. Accordingly, Pennsylvania law will govern in determining the rights of the parties to the proceeds of the annuity.

### III. *Discussion*

In our opinion concerning the parties' earlier cross-motions for summary judgment, we found that there was a conflict between the original contract with the attached rider and a second "amendatory rider" which had apparently been issued at some later time. Based on this conflict, we found that we could not grant summary judgment. *See* Opinion dated May 18, 1998, at 6. The parties now agree that no such second rider was ever part of the contract between the insured and the insurer, and request that the court address their renewed motions for summary judgment.

The supplemental briefs of the parties have been instructive, and we agree that no material issue of fact remains at issue. By disposing of the conflict between the riders, we are now able to consider the annuity as a whole. In so doing, we find that the specific language of the annuity mandates that the policy proceeds be paid to the contingent beneficiaries.

■ Generally, a beneficiary becomes entitled to the proceeds of a life insurance policy upon the death of the insured.[1] *Kucera v. Metropolitan Life Ins. Co.,* 719 F.2d 678, 680 (3d Cir.1983); *Quinten v. United States Steel Corp.,* 186 Pa.Super. 384, 142 A.2d 370, 374–75 (Pa.Super.1958). However, we must honor clear and unambiguous insurance policy language. *Reliance Ins. Co. v. Moessner,* 121 F.3d 895, 901 (3d Cir.1997); *Armotek Indus., Inc. v. Employers Ins. of Wausau,* 952 F.2d 756, 762 (3d Cir.1991); *Paylor v. Hartford Ins. Co.,* 536 Pa. 583, 640 A.2d 1234, 1235 (Pa.1994). Thus, an annuitant may, through clear and unambiguous policy language, provide for an exception to the general rule that the right to an annuity vests absolutely in a primary beneficiary who survives the annuitant.[2]

■ The relationship between beneficiaries is discussed in section 3(K) of the annuity contract. Neither in that section nor elsewhere in the policy is there any indication that the contingent beneficiaries are only to take the proceeds in the event of the death of Patricia Obiecunas *before the death of the insured.* Section 3(K) provides, in its most relevant part:

> If no contingent beneficiary is designated and the beneficiary dies while receiving or entitled to receive payments, any remaining payments will be made to the beneficiary's estate.

1. Although distinctions exist between annuities and insurance policies, the two are largely analogous for our purposes and will be treated as such.

2. "The wording of the insurance contract when a contingent beneficiary is named may be such that a departure is made from the rule that the estate of the beneficiary who survives the insured, but dies before payment, is entitled to the proceeds of insurance; otherwise the beneficiary's estate is so entitled. *The policy may expressly provide for payment to the contingent beneficiary upon the death of the primary beneficiary even though the primary beneficiary had survived the insured.*" 4 Couch on Insurance, § 61:38 (3d ed. Supp.1996)(footnote omitted) (emphasis added).

Although section 3(K) could be more clearly stated, it is not ambiguous. "A provision is ambiguous only if reasonably intelligent persons, considering it in the light of the entire policy, can honestly differ as to its meaning." *Curbee, Ltd. v. Rhubart*, 406 Pa.Super. 505, 594 A.2d 733, 735 (Pa.Super.1991). When considered in context with the rest of the annuity, section 3(K) can only be interpreted to require that, if contingent beneficiaries are designated and the primary beneficiary dies while receiving or entitled to receive payments, any remaining payments will be made to the contingent beneficiaries.

While we have been unable to locate any case law within Pennsylvania in which the facts are analogous to the case at hand, the Washington Court of Appeals considered a similar scenario in *Federal Old Line Ins. Co. v. McClintick*, 18 Wash.App. 510, 569 P.2d 1206 (Wash.App.1977). There, the insurance company was in severe financial straits at the time of the death of the insured, and as a result was unable to pay the policy proceeds to the primary beneficiary. By the time funds became available to pay the proceeds of the policy, the primary beneficiary had also died. Both the contingent beneficiary and the personal representative of the primary beneficiary claimed the right to receive the proceeds.

The *McClintick* court found that where the principal beneficiary of the policy died before the amount due under the policy was paid, the rights to the proceeds passed to the surviving contingent beneficiary pursuant to a specific clause in the policy.[3] That clause read, in relevant part:

Upon death of the last surviving principal Beneficiary, whether such death occurs be-

fore the Insured or after the Insured and before the full amount due hereunder shall have been paid, the interest of such principal Beneficiary last surviving shall pass to the surviving Contingent Beneficiary or Contingent Beneficiaries, share and share alike.

*See also Northwestern Mut. Life Ins. Co. of Milwaukee, Wis. v. Fink*, 118 F.2d 761 (6th Cir.1941)(estate of a primary beneficiary who survived the insured but died before accessing the proceeds was not entitled to the proceeds as against the successor beneficiary due to specific language to the contrary in the policy); *Mayr v. Arana*, 133 Cal.App.2d 471, 284 P.2d 21 (1955)(enforcing clauses in policy providing that contingent beneficiary, rather than estate of primary beneficiary, was to receive proceeds of policy).[4]

Section 6(A)(1) of the annuity provides that, upon the death of the annuitant prior to the annuity commencement date, if no contingent annuitant is named, the beneficiary "will receive a lump sum unless a Settlement Option has been elected." This does not mean, however, that the beneficiary needs to take no action to receive the lump sum. Here, Mrs. Obiecunas received a letter from Pacific indicating that, to receive a lump sum payment, she would need to send a copy of the original policy and a completed annuity claimant's statement, among other items. There is no indication that Mrs. Obiecunas ever complied with this request.

It is undisputed that Patricia A. Obiecunas, as the primary beneficiary of the estate of Vincent J. Obiecunas, was entitled to receive the proceeds of the annuity during her lifetime. However, the entitlement was limited,

---

3. It was found, however, that summary judgment should not have been granted, as factual community property issues remained. As a result, the case was remanded to the trial court for further proceedings.

4. We have also considered *Rossetti v. Hill*, 161 F.2d 549 (9th Cir.1947)(considering similar facts and granting the proceeds of the insurance policy to the estate of primary beneficiary, rather than to contingent beneficiaries), and find it inapplicable here. The section on which the contingent beneficiaries relied in that case differs from section 3(K) in significant ways. Most importantly, the relevant section in *Rossetti* could

simply be read as defining the contingent beneficiaries' right to the benefits as dependent on the death of the primary beneficiary prior to the death of the insured. We find that section 3(K) in the instant policy cannot be read in such a way. Section 3(K) provides for payment to the estate of the primary beneficiary only when no contingent beneficiary is designated and the primary beneficiary dies while "receiving or entitled to receive payments." Only upon the death of Mr. Obiecunas during her lifetime would Mrs. Obiecunas receive or be entitled to receive benefits. The section is thus distinguishable from the one at issue in *Rossetti*.

and ended at the time of her death. As the court found in *McClintick*, the effect of a clause such as section 3(K) is to "postpone vesting of the life insurance policy proceeds until they have been paid to the primary beneficiary." *McClintick*, 569 P.2d at 1209. To hold that the annuity vested absolutely in the primary beneficiary upon the death of the annuitant would render section 3(K) meaningless.

In our view, the annuitant, by clear designation and in his own hand, manifested the intent that the designated contingent beneficiaries should succeed to the proceeds of the annuity which were unclaimed by the primary beneficiary in her lifetime. We will not rewrite the policy to undermine this intent.

Despite the fact that Pacific took steps to make her aware of the need to take some type of action in order to receive the money (doc. no. 20, ex. B), Mrs. Obiecunas failed, in the two years between her husband's death and her own, to take the affirmative action required by the company in order to effectuate receipt of the funds from the annuity. In the absence of her actual receipt of the annuity proceeds, the specific language of the policy dictates that the proceeds are to be distributed to the contingent beneficiaries. Defendant's motion for summary judgment will be granted and plaintiffs' motion will be denied.