**Stanley PRUSAK and Alice Prusak, Plaintiffs,**

v.

**BETHLEHEM 1980 SALARIED PENSION PLAN and Bethlehem Steel Corporation, Defendants.**

**Civ. 83–434C.**

United States District Court, W.D. New York.

Dec. 14, 1984.

Lipsitz, Green, Fahringer, Roll, Schuller & James (David B. Hermann, of counsel), Buffalo, N.Y., for plaintiffs.

Phillips, Lytle, Hitchcock, Blaine & Huber (Michael R. Moravec, of counsel), Buffalo, N.Y., for defendants.

CURTIN, Chief Judge.

Plaintiffs Stanley and Alice Prusak, husband and wife, seek a judgment declaring that they are entitled to a lump-sum pay-

ment under defendants' pension plan. They seek an order directing defendants to pay all benefits owed and ask for damages for mental anguish. Defendants Bethlehem 1980 Salaried Pension Plan and Bethlehem Steel Corporation have moved for summary judgment.

Plaintiff Stanley Prusak worked for Bethlehem Steel from March 1950 until June 30, 1982. He was a participant in defendants' pension plan. Shortly before his retirement, plaintiff applied for a lump-sum payment of his retirement benefits under section 3.12 of the plan. Plaintiff's application was denied by the General Pension Board on the ground that plaintiff and his wife were not in good health. Plaintiffs are still entitled to receive, and are receiving (Docket Item 5, p. 20), regular monthly pension payments. Should Mr. Prusak pre-decease Mrs. Prusak, she would receive surviving spouse's benefits (Item 1, Ex. A and B).

■ Defendants' motion for summary judgment is granted. Courts should only intervene in the administration of an employee benefit plan when the trustees transgress their fiduciary duties by acting in an arbitrary and capricious manner. *Morse v. Stanley,* 732 F.2d 1139, 1145 (2d Cir.1984). Neither the defendants' method for determining who is entitled to receive optional lump-sum payments nor their determination that plaintiffs are not in good health was arbitrary and capricious.

Under this plan, when a participant applies for a lump-sum payment, he submits a report of his physician, which is reviewed by the Corporate Medical Director. If the two physicians disagree and the participant's application is denied, he may appeal to the General Pension Board. The medical records are forwarded to Aetna Life Insurance Company for an independent review based on medical underwriting standards. If a participant amasses more than 150 "debit points," he is found not to be in good health (Item 4, Ex. A, Kempken affidavit).

■ Plaintiff Stanley Prusak was assigned 200 debit points for hypertension,

and plaintiff Alice Prusak was assigned 350 debit points for coronary artery disease and mitral valve prolapse. On review, Aetna Life Insurance Company found neither plaintiff to be in good health (Item 4, Ex. A). Plaintiffs do not deny these medical conditions, nor do they dispute the determination that they are not in good health. Plaintiffs simply claim that there is no evidence that these conditions have reduced their life expectancies (Item 1, ¶ 8). In order to be eligible for lump-sum payment, however, plaintiffs had to present evidence of good health to the Board, which they failed to do.

Plaintiffs claim that the program has been discriminatorily administered, in that defendants have awarded full lump-sum payments to other participants in situations not distinguishable from plaintiffs' (Item 1, ¶ 10).

The Corporate Medical Director is unaware of anyone who was assigned more than 150 debit points being found in good health for purposes of lump-sum payment (Item 4, Ex. A). David W. Kempken, Secretary of the General Pension Board, states that no other applicant has been found to have the same disorders as Mr. Prusak and that only one other applicant suffered from Mrs. Prusak's illnesses. That application was also denied (Item 4, Ex. A). Plaintiffs present no evidence to the contrary in response to the summary judgment motion.

■ The mechanism for determining who received lump-sum payments is not arbitrary or capricious. *Czyz v. General Pension Board and Bethlehem Steel Corp.,* 578 F.Supp. 126 (W.D.Pa.1983). Mr. Kempken said the "good health test" was developed to protect plan assets from depletion. He stated that the Aetna system was adopted in late 1981 to attain uniformity and consistency in the face of burgeoning applications for lump-sum payments (Item 4, Ex. A). In designing procedures to protect the resources of the fund for the benefit of all participants, defendants were fulfilling their fiduciary duties (*Morse, supra.*)

Plaintiffs seem to rely on the argument that the lump-sum pension option, despite its permissive language, is a vested right as part of an accrued benefit (Item 15). Section 3.12 of the plan provides for an optional alternative of a lump-sum payment: "[T]he Plan Administrator may make a lump-sum payment ... only if ... the application is accompanied by evidence, satisfactory to the General Pension Board, of the good health of the participant and the spouse ..." (Item 1, Ex. A).

 No specific mode of payment is required by ERISA. *Panpano v. Michael Schiavone and Sons, Inc.,* 680 F.2d 911 (2d Cir.1982), *cert. denied,* 459 U.S. 1039, 103 S.Ct. 454, 74 L.Ed.2d 607. At most, ERISA provides that if an optional plan is offered, it be the actuarial equivalent of what the participant would have received under the regular retirement age.

Even if a right to apply for optional lump-sum payments has accrued, participants must satisfy the conditions set forth in Section 3.12 of the plan. These conditions are not arbitrary and capricious. Summary judgment is granted to defendants.

So ordered.