John C. DeANGELIS, William B. Bell, Jesse Bicknell, Grover Cornelius, Vincent Connors, Theodore Gill, Joseph Grossi, Charles Houghtaling, William Iannone, Donald Marsh, James McCauley, Anthony F. Moschetto, Hugh Partridge, David Partington, Salvatore Prisco, Louis S. Scarano, William D. Ward, Henry Wetstein, Charles R. Whitehead, Helen Williams, Plaintiffs,

v.

WARNER LAMBERT COMPANY, Defendant.

No. 82 Civ. 1167 (LLS).

United States District Court, S.D. New York.

Aug. 4, 1986.

James G. Sweeney, J. Bennett Farrell, Monroe, N.Y., of counsel for plaintiffs.

Rogers & Wells, New York City, for defendant; Margaret Blair Soyster, of counsel.

## OPINION and ORDER

STANTON, District Judge.

Plaintiffs in this action were all employees of Nepera Chemical Company, Inc. ("Nepera") on September 15, 1976 when defendant Warner-Lambert Company ("Warner-Lambert"), Nepera's parent company, sold all of its Nepera stock to ASAG, Inc. ("ASAG"). (Stipulated Facts, ¶¶ 2–4; Defendant's Rule 3(g) Statement, ¶ 2.)[1] While Nepera was a Warner-Lambert subsidiary, certain of its employees enjoyed the benefits of the Warner-Lambert severance policy, as did employees of most Warner-Lambert subsidiaries. Plaintiffs assert a single claim under the Employee Retirement Income Security Act of 1974

---

**1.** Citations to "Stipulated Facts" refer to the list of agreed facts set forth in the parties' Consent Pre-Trial Order signed by Judge Ward and filed on February 27, 1984.

("ERISA"), 29 U.S.C. § 1001 *et seq.*, alleging that the sale by defendant of its Nepera stock constituted a termination of plaintiffs' employment which entitled them to severance benefits under the Warner-Lambert severance policy. That policy provides for payments to "terminated" employees, the amount of the payments being based upon an employee's earnings at the time of termination, and their duration being based upon the length of his continuous service.

Defendant moves pursuant to Fed.R. Civ.P. 56(b) for summary judgment on all plaintiffs' claims, and in the alternative for dismissal of Helen Williams' claim as time barred.[2] Defendant's motion for summary judgment as to all plaintiffs' claims is granted.

The stock purchase agreement provided that ASAG would cause Nepera to offer to those persons employed there on the date of the stock sale the opportunity to continue as Nepera employees. (Defendant's Rule 3(g) Statement, ¶ 3.)[3] All of the plaintiffs retained their positions at Nepera after the stock sale, though some of them have retired from the company since 1978. (Stipulated Facts, ¶¶ 3, 5, 6.)

■ The parties agree that Warner-Lambert's severance policy is an "employee welfare benefit plan" governed by the provisions of ERISA, 29 U.S.C. § 1002(1). (Second Amended Complaint, ¶ 6; Answer to Second Amended Complaint, ¶ 6.) ERISA was enacted to improve the equitable character and soundness of private employee benefit plans and to establish minimum standards of fiduciary conduct for those who administer such plans. H.R. Rep. No. 533, 93d Cong., 2d Sess., *reprinted in* 1974 U.S. Code Cong. & Ad. News 4639, 4655; *see also Amato v. Bernard,*

618 F.2d 559, 567 (9th Cir.1980) (Congress intended that under ERISA a body of federal law would be developed by the courts "to deal with issues involving rights and obligations under private welfare and pension plans."). In actions challenging the denial of benefits under an ERISA plan, the court is limited to determining whether the plan administrator acted arbitrarily or capriciously in denying a plaintiff's claim. *See Miles v. New York State Teamsters Conference Pension and Retirement Fund Employee Pension Benefit Plan,* 698 F.2d 593, 599 (2d Cir.), *cert. denied,* 464 U.S. 829, 104 S.Ct. 105, 78 L.Ed.2d 108 (1983); *Riley v. MEBA Pension Trust,* 570 F.2d 406, 410 (2d Cir.1977); *Prusak v. Bethlehem 1980 Salaried Pension Plan,* 618 F.Supp. 530, 531 (W.D.N.Y.1984).

■ A party is entitled to summary judgment under Rule 56 only upon a demonstration "(1) that there is no genuine issue of material fact to be tried in the case and (2) that the moving party is entitled to judgment as a matter of law." *Seymore v. Reader's Digest Ass'n, Inc.,* 493 F.Supp. 257, 262 (S.D.N.Y.1980); *see also Universal City Studios, Inc. v. Nintendo Co., Ltd.,* 746 F.2d 112, 115 (2d Cir.1984). The moving party bears the burden of showing the absence of any material issue of fact, and in reviewing a Rule 56 motion the court must draw all reasonable inferences and resolve all ambiguities in favor of the non-movant. *Eastway Construction Corp. v. City of New York,* 762 F.2d 243, 249 (2d Cir.1985); *National Bank of Canada v. Artex Industries, Inc.,* 627 F.Supp. 610, 613 (S.D.N.Y.1986).

Though plaintiffs have asserted that issues of fact remain to be tried, the material facts, those which resolve the issues which

**2.** Defendant also moved for an order striking plaintiffs' jury demand. By a letter dated January 21, 1986 plaintiffs' counsel withdrew their jury demand. Therefore there is no need to address defendant's motion to strike.

**3.** Rule 3(g) of the Civil Rules for the Southern and Eastern Districts of New York requires a party moving for summary judgment to submit a statement of material facts as to which there is no issue to be tried, and it requires the nonmov-

ant to submit a statement of disputed material facts. The rule provides that any fact in the movant's statement which is not controverted by the non-movant is deemed admitted for the purposes of the summary judgment motion. *See Woods v. State of New York,* 469 F.Supp. 1127, 1129 n. 2 (S.D.N.Y.), *aff'd mem.,* 614 F.2d 1293 (2d Cir.1979); *Capano Music v. Myers Music, Inc.,* 605 F.Supp. 692, 697 (S.D.N.Y.1985).

have been raised by the parties in this case, are uncontested. *See Quarles v. General Motors Corp. (Motors Holding Division)*, 758 F.2d 839, 840 (2d Cir.1985) (per curiam) (existence of factual issues not material to claims does not preclude grant of summary judgment).

On the date of the stock sale all the plaintiffs were covered by the Warner-Lambert severance policy, which provided, in relevant part:

> PURPOSE: To assure fair treatment to an employee terminated by the Company as a result of job elimination, work performance, or other reasons of Company convenience except for violations of Company rules and regulations.

(Stipulated Facts, ¶ 3; Exh. 2.) All the plaintiffs were aware of the severance policy, though they were not informed by the defendant of all its details. (Plaintiffs' Aff., March 11, 1983, ¶ 30; Plaintiffs' Aff., Jan. 16, 1986, ¶ 4.)[4]

The written agreement by which Warner-Lambert's stock in Nepera was sold to ASAG provided, in relevant part:

> [ASAG] agrees to cause Nepera to offer those employees of Nepera Company engaged in the Nepera business on [September 15, 1976] the opportunity to continue as employees of Nepera Company on terms, including fringe benefits and credits for length of service, reasonably similar to those heretofore in effect.

(Stipulated Facts, ¶ 4; Exh. 3.) After the stock sale all the plaintiffs continued to work at Nepera in their same positions without interruption and received compensation and benefits comparable to those in force at Nepera before the sale. (Stipulated Facts, ¶¶ 5, 6.) After the sale Nepera offered the same severance benefits to plaintiffs as they enjoyed previously, and those who were Nepera employees in September, 1976 and who have since been terminated received severance benefits based upon their total periods of service at Nepera, including their service before the stock sale. (Stipulated Facts, ¶¶ 10–12.)

On the uncontested facts in the record, the defendant is entitled to judgment as a matter of law.

■ In other ERISA challenges to the denial of severance benefits under similar circumstances, courts have concentrated primarily on four factors in determining whether the plan administrator's denial was arbitrary or capricious:

(1) whether the challenged interpretation of the plan is fair and reasonable in the context of the entire plan; *see Holland v. Burlington Industries, Inc.*, 772 F.2d 1140, 1149 (4th Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 3271, 91 L.Ed.2d 562 (1986); *Sly v. P.R. Mallory & Co., Inc.*, 712 F.2d 1209, 1212–1213 (7th Cir.1983); *see also Denton v. First National Bank of Waco, Texas*, 765 F.2d 1295, 1304 (5th Cir. 1985) (under ERISA "arbitrary or capricious" standard court should consider internal consistency of plan under administrator's interpretation); *Miles*, 698 F.2d at 599 (interpretation which renders certain plan provisions superfluous may be arbitrary or capricious);

(2) whether the challenged interpretation has been uniformly applied in similar situations; *see Blakeman v. Mead Containers*, 779 F.2d 1146, 1151 (6th Cir.1985); *Anderson v. Ciba-Geigy Corp.*, 759 F.2d 1518, 1522 (11th Cir.), *cert. denied*, —— U.S. ——, 106 S.Ct. 410, 88 L.Ed.2d 360 (1985); *Jung v. FMC Corp.*, 755 F.2d 708, 713 (9th Cir. 1985); *Sly*, 712 F.2d at 1213; *Adcock v. Firestone Tire & Rubber Co.*, 616 F.Supp. 409, 423 (M.D.Tenn.1985); *Molyneux v. Arthur Guinness and Sons, P.L.C.*, 616 F.Supp. 240, 246 (S.D.N.Y.1985); *see also Denton*, 765 F.2d at 1304.

(3) whether the grant of severance benefits would render a double recovery of benefits to the plan participants; *see Jung*, 755

---

**4.** All the plaintiffs except Donald Marsh joined the plaintiffs' January 16, 1986 affidavit. All the plaintiffs except Donald Marsh and Helen Williams joined the plaintiffs' March 11, 1983 affidavit, which was submitted with plaintiffs' motion for summary judgment. Plaintiffs have submitted nothing to indicate that Marsh or Williams were unaware of the Warner-Lambert severance policy during their service at Nepera before the stock sale.

F.2d at 714; *Pabst Brewing Co. v. Anger*, 610 F.Supp. 214, 217 (D.Minn.1985), *aff'd*, 784 F.2d 338 (8th Cir.1986) (per curiam); and

(4) whether the plan administrator has violated ERISA's procedural requirements so consistently and flagrantly that a substantive harm has been worked on the plan participants; *see Blau v. Del Monte Corp.*, 748 F.2d 1348, 1353–1355 (9th Cir.), *cert. denied*, —— U.S. ——, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985); *see also Denton*, 765 F.2d at 1304 (reviewing factual background of plan and challenged interpretation for inferences of administrator's bad faith).

The defendant's view that its severance policy does not cover the present circumstances, since it was "intended to alleviate the difficulties likely to confront individuals who lose their jobs" (Aff. of Richard Pecheur, Dec. 17, 1985, ¶ 6), is consistent with and supported by the plan provisions read as a whole. The policy provides, *inter alia:*

> Severance payments commence *following last day worked....* There may be occasions when it is appropriate for employees to be retained on payroll, after having been notified of their termination date, during which time they have the opportunity *to look for other employment.... Statutory benefits, i.e.,* unemployment insurance, *shall be deducted from severance payments.*

(Stipulated Facts, Exh. 2.) (emphasis supplied) Those provisions support defendant's interpretation that a "termination" occurs when an employee involuntarily stops working at his job. *Cf. Holland*, 772 F.2d at 1144–1149 (no "job termination" occurred where plaintiffs continued to work at same jobs in division sold by defendant); *Jung*, 755 F.2d at 712–714 (no "involuntary termination" in similar circumstances); *Sly*, 712 F.2d at 1212–1213 (plaintiffs not "involuntarily terminated" by defendant where they retained their jobs in transferred division).

Plaintiffs' somewhat mechanical view is that since their employment relation with Warner-Lambert was severed by the Nepera stock sale, they were necessarily "terminated" under the severance policy. While the parties disagree over whether the plaintiffs were employees of Warner-Lambert, or only of Nepera, that issue need not be decided. Even assuming that prior to September, 1976 plaintiffs were Warner-Lambert employees, the fact that their employment relation with that company was ended by the stock sale is merely the beginning of the analysis. The key question remains: was defendant's interpretation of its severance policy, determining that under the circumstances plaintiffs were not "terminated," arbitrary or capricious? The Ninth and Eleventh circuits addressed the same question on similar facts, and while they determined that the parties' employment relations literally had been severed, they nevertheless held that the defendants' refusal to pay plaintiffs severance benefits under plans similar to Warner-Lambert's was not arbitrary or capricious. *Anderson*, 759 F.2d at 1521, 1523; *Jung*, 755 F.2d at 712–713, 715.

The plaintiffs further contend that defendant's interpretation of its severance policy is arbitrary or capricious because it is inconsistent with other policy provisions. They point to provisions for payment of severance benefits to employees in whom such benefits have vested even after they obtain other employment. (*See* Stipulated Facts, Exh. 2.) From this plaintiffs conclude that defendant's severance policy does not require a "terminated" employee to experience a period of unemployment in order to be entitled to receive severance benefits.

There is no inconsistency between that provision and defendant's interpretation of the policy. While certain employees may indeed be entitled to receive full severance benefits under defendant's policy without any period of unemployment, they nevertheless do not become entitled to receive benefits at all, under defendant's interpretation of the policy, until they actually leave the positions they hold at Nepera. *Cf. Holland*, 772 F.2d at 1149 (fact that severance benefits continued after new em-

ployment was obtained does not refute defendant's position that severance policy was primarily intended to benefit those who lose their jobs).

In further support of the defendant's interpretation of its severance policy is the fact that between 1962 and 1976 there were at least twelve divestitures of divisions or corporate subsidiaries by Warner-Lambert, and in none of them did the defendant pay severance benefits to those employees who continued in their jobs with the acquiring company without interruption. (1985 Pecheur Aff., ¶¶ 7, 8.) As plaintiffs point out, Warner-Lambert did settle a claim before the Michigan Department of Labor brought by four employees who sought severance benefits after a subsidiary divestiture in which they retained comparable positions. (Aff. of Richard Pecheur, May 17, 1983, ¶¶ 4, 5.) However, the fact that defendant reached a compromise on that claim cannot be held against it as a departure from its consistent interpretation of its severance policy. *See Triangle Industries, Inc. v. Kennecott Copper Corp.*, 402 F.Supp. 210, 211–212 (S.D.N.Y.1975) (settlement in a similar case is not binding on a party).

Plaintiffs also argue that defendant may not claim to have followed a consistent interpretation of its severance policy since no claim for severance pay has been made by any employee, other than those in the Michigan action, after previous divestitures. (Plaintiffs' Memorandum of Law at 24–25.) That argument has little force. Warner-Lambert has supplied the affidavit of the company's personnel administrator during the relevant period, who drafted the original version of the company's severance policy, to show that it would not have been within the animating purpose of the policy, as the company understood that purpose, ever to pay severance benefits to employ-ees who retained their positions without interruption after a divestiture. (1985 Pecheur Aff., ¶¶ 2–6.) The plaintiffs have presented no evidence to the contrary.

The third factor in the analysis supports defendant's position as well. All the plaintiffs, except those who have retired since 1976, are entitled under the current Nepera severance policy to severance benefits based upon their service at Nepera before and after the 1976 stock sale. (Stipulated Facts, ¶¶ 10, 11.) If plaintiffs were to receive severance pay now based upon their pre–1976 Nepera service, they would receive a windfall double recovery should they be laid off by Nepera in the future. That defendant's interpretation of its severance policy avoids such an unreasonable result shows further that its view is not arbitrary or capricious. *Cf. Jung*, 755 F.2d at 714; *Sly*, 712 F.2d at 1211.

Finally, plaintiffs argue that Warner-Lambert's failure to satisfy ERISA's procedural requirements was so egregious that its decision to deny severance benefits to plaintiffs was rendered arbitrary and capricious. Specifically, plaintiffs claim that defendant failed to provide its employees with a written summary plan description of the severance policy as required in 29 U.S.C. § 1022, to file annual reports with the Secretary of Labor as required in 29 U.S.C. § 1023, and to designate a named fiduciary of the plan as required in 29 U.S.C. § 1102.[5] (Second Amended Complaint, ¶¶ 27–29; Plaintiffs' Memorandum of Law at 14–15.) Defendant concedes that it failed to satisfy those ERISA reporting and disclosure provisions (Answer to Second Amended Complaint, ¶¶ 27–29), but argues that its failure did not rise to the level of substantive harm necessary to invalidate its interpretation of its policy.

---

**5.** Plaintiffs also contend that defendant failed to incorporate a claims procedure in its severance policy in violation of 29 U.S.C. § 1133. However, that section does not require that a claims procedure be written into an ERISA plan. It merely requires that the plan administrator give notice and an opportunity for review to a participant whose claim for benefits has been reject-ed. *See Grossmuller v. International Union, United Automobile Aerospace and Agricultural Implement Workers of America, UAW, Local 813*, 715 F.2d 853, 856–858 (3d Cir.1983). Here the plaintiffs did not make any claim for severance benefits before bringing this suit. (Stipulated Facts, ¶ 7.)

Under ERISA an administrator's failure to follow statutory procedural requirements does not ordinarily entitle a plan's participants to a substantive remedy. Such a remedy is appropriate only when the procedural dereliction works a substantive harm on the participants. *See Gilbert v. Burlington Industries, Inc.*, 765 F.2d 320, 328 (2d Cir.1985), *aff'd,* — U.S. —, 106 S.Ct. 3267, 91 L.Ed.2d 558 (1986) (per curiam) (No. 85–460); *Ellenburg v. Brockway, Inc.*, 763 F.2d 1091, 1096 (9th Cir. 1985); *Blau,* 748 F.2d at 1353–1354. Plaintiffs rely on the *Blau* case to support their argument based upon defendant's procedural omissions. In *Blau* the plaintiffs challenged the defendant's denial of severance benefits after defendant divested its wholly-owned subsidiary which employed plaintiffs. The court reversed the district court's grant of summary judgment to defendant, holding that defendant's "wholesale" and "flagrant" failure to comply with ERISA's reporting and disclosure requirements precluded finding as a matter of law that defendant's denial of benefits was not arbitrary or capricious. *Id.* at 1353.

The instant case is different from *Blau.* Plaintiffs have made no showing that Warner-Lambert intentionally concealed its severance policy from its employees as the defendant did in *Blau.* Indeed, the plaintiffs concede that throughout their terms of employment they were aware of the Warner-Lambert severance policy. (1983 Plaintiffs' Aff., ¶ 30.)[6] Moreover, in *Blau* the defendants failed to make any response to plaintiffs' demand for severance pay. *Id.* at 1351. Here the plaintiffs never made such a demand. (Stipulated Facts, ¶ 7.) The plaintiffs have failed to meet the "very high threshold [established in *Blau* ] for determining arbitrary and capricious conduct *vis-a-vis* noncompliance with ERISA's procedural requirements." *Adcock,* 616 F.Supp. at 420; *see also Jung,* 755 F.2d at 714–715; *Sly,* 712 F.2d at 1213; *Pabst,* 610 F.Supp. at 216.

In sum, Warner-Lambert's severance policy has been fairly and consistently construed by the company, and defendant's procedural omissions under ERISA did not work substantive harm on the plaintiffs. Warner-Lambert's denial of severance benefits under its policy was not arbitrary or capricious.

Accordingly defendant's motion for summary judgment is granted. The Clerk is directed to dismiss plaintiffs' complaint.

So ordered.