658 F.Supp. 1053 (1987)
Clyde SIMMONS, et al., Plaintiffs,
v.
DIAMOND SHAMROCK CHEMICALS COMPANY, Defendant.
No. 86-0725C(3).
United States District Court, E.D. Missouri, E.D.
March 9, 1987.
David O. Danis, Danis, Reid, Murphy, Garvin, Tobben, Schreiber and Mohan, St. Louis, Mo., for plaintiffs.
Richard E. Jaudes, Peper, Martin, Jensen, Maicehl and Hetlage, St. Louis, Mo., Chester J. Hinshaw, Patricia J. Villareal, Dallas, Tex., for defendant.

MEMORANDUM
HUNGATE, District Judge.
This matter is before the Court on defendant's motion for summary judgment.[1]
*1054 Plaintiffs bring this action to recover separation and vacation pay under a severance pay policy maintained by defendant Diamond Shamrock Chemicals Corporation (Diamond Shamrock), plaintiffs' previous employer. Defendant moves for summary judgment in its favor, arguing in general that plaintiffs never became unemployed and thus were not qualified for benefits under the policy. Plaintiffs oppose the motion.
In open court, counsel for all parties represented that there exists no genuine issue as to any material fact in this action. Upon review of the record, the Court agrees and this action is therefore appropriate for summary disposition.
The Court having considered the relevant record; the parties' oral and written arguments in support of their positions on defendant's motion for summary judgment; and being fully advised in the premises, the Court makes the following findings of fact and conclusions of law.

Findings of Fact
1. No party challenges the subject matter jurisdiction of this Court, this Court's personal jurisdiction over the parties, or the propriety of venue in this district.
2. Plaintiffs Lloyd Cole and Clyde Simmons were salaried employees of defendant Diamond Shamrock at its Vitex American business (Vitex) until Vitex was sold as a going concern to Mallinckrodt, Inc. (Mallinckrodt) on February 27, 1981. The Vitex business of Diamond Shamrock engaged in interstate commerce.
3. As a result of the sale of Vitex to Mallinckrodt, plaintiffs' employment with Diamond Shamrock ceased and, the next day, plaintiffs became employees of Mallinckrodt. Plaintiffs did not become "unemployed" and did not miss any work or pay as a result of the sale of Vitex to Mallinckrodt. After the sale, they kept the same jobs with Mallinckrodt as they formerly had with Diamond Shamrock, including the same or greater rate of compensation, the same duties and responsibilities, and the same location of work.
4. At all times relevant to this action, defendant Diamond Shamrock maintained corporate personnel policies applicable to the salaried employees of Vitex, including plaintiffs. These policies were contained in a Personnel Policies and Procedures Manual maintained by Diamond Shamrock at each of its facilities, including Vitex. A policy captioned "Separation PolicyCompensation" for salaried employees, a true and correct copy of which is attached hereto as Exhibit A and incorporated herein by reference as if fully set forth (Separation Pay Policy), was one of the policies contained in the Personnel Policies and Procedures Manual. Throughout their employment with Diamond Shamrock, plaintiffs had access to the Personnel Policies and Procedures Manual in which the Separation Pay Policy was contained, and knew that Diamond Shamrock maintained a Separation Pay Policy. Diamond Shamrock did not attempt to conceal, and did not conceal, the Separation Pay Policy from plaintiffs.
5. Diamond Shamrock did not provide employees with a written summary plan description, did not file annual reports with the Secretary of Labor, and did not establish a formal claims procedure with respect to the Separation Pay Policy pursuant to ERISA, 29 U.S.C. §§ 1021-1024, 1133.
6. The Separation Pay Policy provides for payment of certain benefits, including separation and vacation pay, to those salaried *1055 employees of Diamond Shamrock who are separated from employment "due to lack of necessary competence" or "because of a permanent layoff due to lack of work[.]" The Separation Pay Policy does not expressly refer to a separation from employment resulting from the sale of a business.
7. Diamond Shamrock's purpose in adopting and thereafter implementing the Separation Pay Policy was to provide benefits to those employees who, through no fault of their own, became unemployed as a result of the involuntary termination of their employment. The Separation Pay Policy was intended to bridge the financial gap between the involuntary termination of an employee's employment with Diamond Shamrock and his/her obtaining new employment.
8. Under the Separation Pay Policy and predecessors thereto, Diamond Shamrock consistently paid separation benefits to those entitled employees who became unemployed as a result of divestiture of a business because they were not either offered employment by the purchaser or retained by Diamond Shamrock in other positions. Diamond Shamrock has never applied the Separation Pay Policy, or any predecessor separation pay policies, to provide a payment to employees who did not become unemployed as a result of a sale or divestiture of a business such as Vitex, and who, like plaintiffs, continued their employment with a purchaser of any business sold by Diamond Shamrock.
9. In accordance with its consistent practice and interpretation of the Separation Pay Policy and predecessors thereto, Diamond Shamrock did not pay separation pay benefits to the plaintiffs when they ceased working for Diamond Shamrock on February 27, 1981, and became employees of Mallinckrodt effective immediately. Diamond Shamrock did pay separation pay to those Vitex salaried employees who were not offered continued employment by Mallinckrodt and for whom other jobs with Diamond Shamrock were not available.
10. Plaintiffs did not make claims for separation pay under the Separation Pay Policy by presenting such claims to Diamond Shamrock's Human Resources personnel or to the management of Vitex prior to filing this lawsuit.
11. On or about October 20, 1980, Diamond Shamrock adopted a special policy for separation pay and other unemployment benefits for employees who became unemployed as a result of a divestiture of the Foods Division, including Vitex, and other of its businesses because a purchaser did not offer them employment upon the sale and they did not obtain other employment within Diamond Shamrock; the "Policy Governing Salaried Employees Directly Affected by Divestiture" (Divestiture Policy), attached hereto as Exhibit B and incorporated herein by reference as if fully set forth.
12. The Divestiture Policy applied the Separation Pay Policy in the context of business divestitures. The Divestiture Policy did not reduce or diminish separation and vacation benefits available to Diamond Shamrock employees. Indeed, the language of the Divestiture Policy indicates that it provided separation pay benefits greater than those specified in the Separation Pay Policy. The Divestiture Policy did not modify the Separation Pay Policy's eligibility conditions in contemplation of the sale of Vitex or any other Diamond Shamrock business, as it restated Diamond Shamrock's consistent past interpretation and application of the Separation Pay Policy and predecessors thereto, that employees who transferred to a purchaser of one of Diamond Shamrock's businesses or transferred to other jobs within Diamond Shamrock and suffered no unemployment upon the sale, were not eligible to receive separation pay benefits, and that only employees who became unemployed as a result of the divestiture were eligible to receive such benefits.
13. Diamond Shamrock did not attempt to conceal, and did not conceal, the Divestiture Policy from plaintiffs.
14. Neither the Separation Pay Policy nor the Divestiture Policy discriminates against lower level salaried employees and in favor of higher level employees, such as *1056 corporate officers, as to entitlement to separation pay benefits, and both have been applied in a consistent, nondiscriminatory manner.
15. To the extent any finding of fact may constitute a conclusion of law, it shall be considered a conclusion of law.

Conclusions of Law
1. This Court has jurisdiction over this action pursuant to § 502 of the Employee Retirement Income Security Act of 1974 (ERISA), as amended, 29 U.S.C. § 1132, and 28 U.S.C. § 1331.
2. Diamond Shamrock is "an employer engaged in commerce" within the meaning of ERISA, 29 U.S.C. § 1003.
3. The Separation Pay Policy is an "employee welfare benefit plan" within the meaning of ERISA, 29 U.S.C. § 1002(1), of which plaintiffs were at all times relevant to this action "participant[s]" within the meaning of ERISA, 29 U.S.C. § 1002(7). See, e.g., Gilbert v. Burlington Industries, Inc., 765 F.2d 320, 324-26 (2d Cir.1985) (unfunded severance pay plan is an employee welfare benefit plan under 29 U.S.C. § 1002(2)), aff'd, ___ U.S. ___, 106 S.Ct. 3267, 91 L.Ed.2d 588 (1986) (per curiam).
4. This case is governed by ERISA, 29 U.S.C. §§ 1001, et seq., which preempts state law, including decisional law, as it relates to an employee benefit plan such as the Separation Pay Policy. 29 U.S.C. § 1144(a); Jung v. FMC Corp., 755 F.2d 708, 714 (9th Cir.1985); see Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983) (finding one state law preempted and another not preempted by ERISA).
5. Federal courts may look to state law for purposes of developing a body of federal common law under ERISA; however, state common law principles, including rules of contract construction, that are inconsistent with ERISA, specifically including the rule of construction that ambiguities in a contract are to be construed against the drafter, are not applicable to ERISA actions. Smith v. CMTAIAM Pension Trust, 654 F.2d 650, 655 (9th Cir.1981) (interpreting pension plan); Bruch v. Firestone Tire & Rubber Co., 640 F.Supp. 519, 524 n. 3 (E.D.Pa.1986) (interpreting termination pay plan). See also Quinn v. Burlington Northern, Inc. Pension Plan, 664 F.2d 675, 678 (8th Cir.1981) (pursuant to ERISA, state law may not be used to interpret pension plan language), cert. denied, 456 U.S. 928, 102 S.Ct. 1976, 72 L.Ed.2d 444 (1982). Thus, even assuming arguendo that the doctrine of collateral estoppel might apply here, the Gerson case, supra, which relied on state contract principles, would be inapplicable here to the extent those principles are inconsistent with ERISA. See also Hagler v. J.F. Jelenko & Co., 719 S.W.2d 486 (Mo.App.1986) (finding ERISA preempts state trial court decision regarding unfunded severance plan based on state contract principles.)
6. The issue presented is whether Diamond Shamrock's determination that the phrase "separation from employment ... because of a permanent layoff due to lack of work," as used in the Separation Pay Policy, does not include the transfer of employment of a salaried employee to the purchaser of a business as a going concern when that employee suffers no unemployment was arbitrary, capricious, or an abuse of discretion. See Quinn, supra, 664 F.2d at 678 (trustee's interpretation of pension plan language is viewed under the "arbitrary, capricious and abuse of discretion standard"); Jung, supra, 755 F.2d at 711-12 (same standard applies to employer's interpretation of unfunded plan).
7. Under the arbitrary, capricious, and abuse of discretion standard, this Court must sustain Diamond Shamrock's interpretation of the Separation Pay Policy if that interpretation was a reasonable one, regardless of whether the Court determines that it was the "best" interpretation or that plaintiffs' proffered interpretation would also be reasonable. See Jung, supra, 755 F.2d at 713 (employer entitled to construe provisions of severance pay policy so long as interpretation not arbitrary and capricious); Bruder v. Pension Plan for Employees of Holscher-Wernig, Inc., 599 F.Supp. 347, 349-50 (E.D.Mo.1984) (pension *1057 plan administrator's interpretation upheld despite argument plaintiff's interpretation is as reasonable as administrator's interpretation), aff'd, 767 F.2d 930 (8th Cir. 1985).
8. Here, as in Jung, supra, 755 F.2d at 713, the clear language of the Separation Pay Policy "does not mandate the payment of severance benefits upon divestiture and transfer of employees...."
9. Diamond Shamrock's decision not to pay plaintiffs separation pay was consistent with the purpose behind the adoption of the Separation Pay Policy and was a reasonable interpretation of the language of the Separation Pay Policy.
10. Diamond Shamrock's consistent interpretation of the Separation Pay Policy and predecessors thereto is evidence of the good faith and the rationality of Diamond Shamrock's interpretation in this case that plaintiffs were not entitled to separation benefits. Anderson v. Ciba-Geigy Corp., 759 F.2d 1518, 1522 (11th Cir.), cert. denied, ___ U.S. ___, 106 S.Ct. 410, 88 L.Ed.2d 360 (1985); Ausloos v. Chromalloy American Corp., 626 F.Supp. 324, 328 (E.D.Wisc.1986).
11. In this case, as in Pabst Brewing Corp. v. Anger, 610 F.Supp. 214, 217 (D.Minn.1985), aff'd, 784 F.2d 338 (8th Cir. 1986) (per curiam), a case adjudicated on summary judgment, Diamond Shamrock's denial of separation benefits to plaintiffs was, as a matter of law, not arbitrary, capricious, or an abuse of discretion. Diamond Shamrock reached a logical conclusion when it determined that separation pay benefits were intended for employees who suffered at least some period of unemployment as a result of the sale of Vitex. Id.[2]
12. Blau v. Del Monte Corp., 748 F.2d 1348 (9th Cir.1984), cert. denied, ___ U.S. ___, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985), a case on which plaintiffs rely, is inapposite to this case because (a) here, plaintiffs were aware of the existence of Diamond Shamrock's separation pay plan, DeAngelis v. Warner Lambert Co., 641 F.Supp. 467, 473 (S.D.N.Y.1986); (b) Diamond Shamrock did not conceal the Separation Pay Policy from plaintiffs, id.; (c) plaintiffs have made no showing that they suffered any substantive harm as a result of Diamond Shamrock's noncompliance with the procedural and technical requirements of ERISA, id. at 472, 473; see also Gilbert, supra, 765 F.2d at 328-29 (claimants must establish defendant's noncompliance sufficiently tainted denial of benefits so as to warrant determination the denial is arbitrary and capricious); Ellenburg v. Brockway, Inc., 763 F.2d 1091, 1096 (9th Cir. 1985) (procedural defects in compliance remedied only if substantive harm flows therefrom); (d) unlike in Blau, the Separation Pay Policy was not applied in a discriminatory fashion, cf. Blau, 748 F.2d at 1356; and (e) plaintiffs did not make any claim for separation pay under the Separation Pay Policy prior to the commencement of this action, DeAngelis, supra, 641 F.Supp. at 472 n. 5.
13. While it is true that Diamond Shamrock did not comply with the reporting and technical requirements with respect to the Separation Pay Policy, technical ERISA violations are not determinative of whether or not a denial of separation *1058 benefits is arbitrary, capricious, or an abuse of discretion where, as here, the technical violations have not resulted in substantive harm. DeAngelis, supra, 641 F.Supp. at 472-73; Ellenburg, supra, 763 F.2d at 1096 (claim for retirement benefits). Diamond Shamrock's conduct, as compared to that in Blau, supra, did not approach the "very high threshold for determining arbitrary and capricious conduct vis-a-vis noncompliance with ERISA's procedural requirements." DeAngelis, supra, 641 F.Supp. at 473 (quoting Adcock v. Firestone Tire & Rubber Co., 616 F.Supp. 409, 420 (M.D.Tenn.1985)); see also Jung, supra, 755 F.2d at 714-15 (under circumstances, Blau inapposite); Pabst Brewing Corp., supra, 610 F.Supp. at 216 n. 1 (alleged violations fall short of those found in Blau).
14. To the extent any conclusion of law may constitute a finding of fact, it shall be deemed a finding of fact.
Accordingly, after careful consideration, defendant's motion for summary judgment will be granted.

*1059 EXHIBIT A

----------------------------------------------------------------------------
 Diamond Shamrock | PER 12-01
----------------------------------------------------------------------------
Personnel | SECTION
Policies | SEPARATION POLICY
Manual |--------------------------------------------------
 | SUBJECT
 |
 | COMPENSATION
-----------------------------------------------------------------------------
GENERAL POLICY Where separation from employment is due to a lack of
 necessary competence or because of a permanent layoff
 due to lack of work, the employee will receive the
 following:
 A. For less than six months' service  Either one
 week's notice or one week's pay in lieu of notice,
 plus vacation compensation earned and unused at
 the time of separation.
 B. For service of six months to one year  Either
 two weeks' notice or two weeks' pay in lieu of
 notice, plus vacation compensation earned and
 unused at the time of separation.
 C. For service in excess of one year  One week's
 notice or one week's pay in lieu of notice for each
 year of employment with a minimum of two
 weeks' pay, plus vacation compensation earned
 and unused at the time of separation.
 D. In all cases, notice or pay in lieu of notice will be
 counted as part of the separation compensation.
 With approval of the Vice President of Human
 Resources the employee may work in lieu of
 receiving separation pay for any portion of the
 time due the employee.
SPECIAL HANDLING In special cases where a Division or Department head
 deems it advisable to give more than the usual notice,
 the matter should be referred to the Vice President of
 Human Resources', presenting all facts together with
 recommendations. It is expected that during the period
 between notice and actual separation the employee will
 report for work regularly except for occasional time off
 granted at the discretion of the Division or Department
 Head to seek other employment. However, an employee
 has the option of leaving immediately after having
 been given notice of separation without waiting out the
 notice time.
PAYMENT DUE AT RESIGNATION Only vacation accrual payment and not separation payment
 will be made when the termination of employment
 is at the employee's instigation; when an employee
 retires either at his or her election or at normal retirement
 date.
-----------------------------------------------------------------------------------------
Date March 1, 1979

*1060 EXHIBIT B

 CONFIDENTIAL
Diamond Shamrock
--------------------------------------------------------------------------
Interoffice Correspondence
--------------------------------------------------------------------------
To: G. G. Carlton
From: W. L. Abele
Date: October 20, 1980
--------------------------------------------------------------------------
Subject: POLICY GOVERNING SALARIED EMPLOYEES DIRECTLY AFFECTED BY
 DIVESTITURE
This policy is to apply to salaried employees of the Animal Nutrition, Food, Functional Polymers,
Medical Products, Metal Coatings, and Plastics Divisions directly affected by the divestiture
(sale, phase-out, shutdown, etc.) of a business, portion of a business, or facility.
1. In the event of a sale and the purchaser agrees to allow Diamond Shamrock employment
 time as credited service for vacation purposes to employees electing to go with the new
 company, accrued vacation payments will not be paid to the transferred employees. In cases
 where the purchaser does not agree to allow this credit, employees electing to go with the
 new employer will be paid accrued vacation payments at their time of transfer to the new
 company. All employees will be assured that, in the calendar year of the sale, they will
 either be allowed to take accrued but unused vacation or be compensated for it.
2. For employees with good work records not offered employment with the new company,
 offered employment with the new company but rejecting the offer and electing to stay with
 Diamond Shamrock, or those directly affected by the phase-out or shut-down of a facility, the
 Corporation will expend every reasonable effort to find meaningful work for these employees
 in Diamond Shamrock.
 If placement within Diamond Shamrock cannot be accomplished, employees, upon notification
 that their services are no longer needed, which will normally be at the time the new owner
 officially takes over the business, will receive one week separation pay for each year of
 Diamond Shamrock employment plus a bonus of four weeks pay with a minimum of ten
 weeks pay granted, along with vacation earned but unused. To be eligible for this policy, an
 employee must be permanent, full-time, and on the Table of Organization of that Division as
 of the date the official announcement of sale or shutdown is made to the employees.
 Employees who elect to work for the new company, in the case of a sale, will not be eligible
 for this policy.
 Employees who terminate voluntarily, including those offered positions at their same
 geographical location by Diamond Shamrock or by a new owner of the business and rejecting
 those positions, prior to being notified that their services are no longer needed will be
 handled as any regular terminating employee and, as such, will not be eligible for separation
 pay. They will be eligible for vacation earned but unused at time of termination.
 Employees for whom placement cannot be arranged and who remain until notification that
 their services are no longer needed, will have employee benefits coverages at termination as
 follows:
 a. Health Insurance (excluding Dental) benefits for the employee and dependents continue
 for ninety days following the date of termination, and then they have an additional 31
 days to convert to an individual policy.
 b. Dental Benefits cease as of the date of termination.
 c. Life Insurance Benefits continue for ninety days following the employee's last workday,
 and then the employee will have an additional 31 days to convert to an individual policy.
 d. Eligibility for Short-Term and Long-Term Disability Benefit coverage stops at date of
 termination.
 e. Retirement Service Credits cease at date of termination. However, employees with at
 least ten years of service are eligible for a vested pension benefit.
 f. Employee Stock Ownership Plan participants will receive credit for earnings up to the
 date of termination.

*1061
 g. Employees will receive their Employee Savings Plan participant accounts plus any
 vested Corporate class years.
3. The following provisions will apply to those employees, with 20 or more years of service, for
 whom placement cannot be accomplished and who remain employed until notified that their
 services are no longer needed:
 a. Eligible employees will have the choice of a lump sum payment at the time of
 termination of one week's salary for each year of service, or an extended separation
 payment according to the following formula:
 One week's salary for each month until age 65; or one week's salary for each of
 the first 12 years of service, and 2 weeks salary for each year of service over 12
 years; whichever is smaller with payment not being made for more than 10
 years or beyond age 65, whichever comes first. The lump sum payment, only,
 will have added to the lump sum amount the four week bonus outlined in
 Section 2 above.
 b. Employees chosing the extended separation payment will be bound by the following
 conditions:
 1. Payments to the employee will be made annually, in a lump sum; the first payment
 to be made at time of termination, and on January 1 thereafter.
 2. Each employee to whom the above is applicable will receive a letter indicating the
 following items:
 a. The company is under no obligation to pay this separation supplement.
 b. Payment will be made a year at a time at the sole discretion of the Company
 c. The separation payment is made from operating funds and not from any benefit
 plan funds.
 d. The separation pay is not included in pensionable earnings for the purpose of
 calculating a pension benefit.
 e. The letter should be given to the employee in duplicate, having the employee
 sign one copy as understanding the terms, and returning the signed copy to the
 Corporation for file.
4. Employees, age 55 or older at date of termination, will be treated as retired employees with
 provisions of the Retirement Income Plan applying. Employees in this category who elect to
 stay with Diamond Shamrock and for whom placement is not accomplished, and who remain
 employed until notification that their services are no longer needed, will receive the employee
 benefit provisions described in Section 2 above. Retired Health Insurance and Retired Life
 Insurance provisions will become operative at the conclusion of the ninety day period.
/s/ W. L. Abele
____________________________
W. L. Abele
 APPROVED:
/s/ C. R. Powell
____________________________
C. R. Powell
/s/ C. E. Stewart
____________________________
C. E. Stewart
/s/ G. G. Carlton
____________________________
G. G. Carlton

NOTES
[1] Plaintiffs also sought partial summary judgment on all counts as to liability. Plaintiffs argued that the doctrine of collateral estoppel precludes defendant's litigation here of issues raised in and determined by the state courts in Michael F. Gerson, et al. v. Diamond Shamrock Corp., cause no. 462943, unpublished order (Cir. Crt.County of St. Louis, Missouri, Mar. 8, 1985), aff'd, 710 S.W.2d 368 (Mo.App.1986). Defendant opposed the motion, arguing that the prior litigation was decided on state law principles inapplicable to this action under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et seq. (ERISA). Alternatively, defendant urged Missouri law does not permit the offensive use of collateral estoppel. After hearing the parties' arguments and considering the record with respect to both sides motions for summary judgment, plaintiffs' motion was denied in open Court and defendant's counsel was directed to file proposed findings and conclusions as to its motion. Plaintiffs filed a response to defendant's proposal.
[2] The Court understands the United States Court of Appeals for the Eighth Circuit does not publish per curiam slip opinions unless such opinion is explicitly designated for publication. Pursuant to the "Plan for Publication of Opinions" for the United States Court of Appeals for the Eighth Circuit, adopted and effective January 11, 1973,

[u]npublished opinions ... may not be cited or otherwise used in any proceedings before ... ["]any district court in this circuit" except when the cases are related by virtue of an identity between the parties or the causes of action.
Absent such provisions, this Court would consider Acton v. Tosco Corp., while not exactly identical in factual circumstances, illuminating in this case. See Acton v. Tosco Corp., 815 F.2d 1161 (8th Cir.1986) (per curiam) (affirming district court's grant of summary judgment in favor of defendant on plaintiffs' ERISA claim that plaintiffs were entitled to severance benefits upon defendant's sale of part of its business to another and the purchaser's immediate hiring of plaintiffs).